Leonard **FISH**, Appellant,

v.

**TANDY CORPORATION**, Appellee.

No. 2–96–170–CV.

Court of Appeals of Texas,
Fort Worth.

June 12, 1997.

Rehearing Overruled Aug. 14, 1997.

Philip R. Bishop, Mark C. Roberts, II, Kristin M. Jenkins, Bishop, Payne, Williams & Werley, P.C., Fort Worth, for Appellant.

Mark C. Hill, Melissa A. Smith, Haynes & Boone, L.L.P., Fort Worth, for Appellee.

Before DAY, LIVINGSTON and RICHARDS, JJ.

## OPINION

DAY, Justice.

Appellee Tandy Corporation sued appellant Leonard Fish and Technology Stores for a declaratory judgment regarding the parties' rights and duties under a letter agreement (letter agreement) and a distributorship agreement involving distributorship rights in the area of St. Petersburg, Russia (distributorship agreement). Fish made a special appearance to challenge the trial court's personal jurisdiction over him. The trial court found it had jurisdiction. Tandy then moved for partial summary judgment against Fish. Before ruling on the summary judgment, the trial court ordered all parties to assert all their claims arising from the parties' negotiations. Fish then counterclaimed, alleging fraud and breach of contract in connection with a purported agreement between Tandy and Fish individually involving distributorship rights in the area of Russia west of Moscow (Moscow agreement). The trial court granted Tandy's first motion for summary judgment on the sole basis that any negotiations regarding distributorships in Russia were merged into the distributorship agreement. Tandy then moved for summary judgment on Fish's counterclaims, which the trial court granted.

Fish appeals, raising four points of error. Fish first complains that the trial court erroneously subjected him to personal jurisdiction in Texas. Next, he contends that the trial court erred by ordering him to file all his claims. In points three and four, he argues that the trial court erred in granting each of the summary judgments because Tandy failed to prove there were no issues of material fact and it was entitled to the judgments as a matter of law. We affirm the trial court's order denying Fish's challenge to its jurisdiction and its order to all parties to file all claims relating to their negotiations; however, we reverse the trial court's summary judgments and remand this case to the trial court.

## BACKGROUND

In 1992, Fish and Tandy began negotiations regarding the rights to distribute Tandy merchandise in Russia. Fish admits that during these negotiations he acted in contemplation of forming, or on the behalf of, Technology. However, Technology's articles of incorporation were not filed until after these negotiations, October 25, 1993. Tandy and Fish agreed, during these negotiations, that Technology would open stores and distribute Tandy merchandise in St. Petersburg, Russia. However, Fish argues that in exchange for his agreement to reduce the territory of the distributorship, Tandy also promised him individually the right of first refusal on an exclusive distributorship in the area west of Moscow, Russia. He contends that this agreement is evidenced by correspondence between Tandy and him on June 22–23, 1993.

Fish individually signed a letter agreement providing that he would sign a "Distributorship Agreement for the St. Petersburg, Russia territory." This agreement also set forth deadlines for signing the distributorship agreement and for opening a St. Petersburg store. It further granted Fish the right of first refusal on distributorships in Estonia, Lithuania, and Latvia. Fish executed this letter agreement individually on September 28, 1993.

Fish, as president of Technology, and Tandy executed the distributorship agreement, which was largely a standard Tandy distributorship agreement, two weeks later. Technology's articles of incorporation were filed approximately two weeks later. At the outset, this distributorship agreement established a distributorship territory in "an area which has as its central point St. Petersburg, Russia and the surrounding market described by the area of Russia, north of lati-

tude 58 degrees and west of longitude 50 degrees." Further, it contains a merger clause providing that "[a]ll prior negotiations and agreements between the parties hereto with respect to the subject matter of this Agreement are hereby merged herein and no statement, agreement or understanding, oral or written, not contained herein will be recognized or enforced." It also provides for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement or breach thereof shall, at the written request of either party, be submitted to arbitration."

Subsequent disagreements arose between Tandy and Fish, and Fish threatened litigation. Tandy then sued for a declaratory judgment defining the rights of the parties under both the distributorship agreement and the letter agreement and asking the court to compel arbitration. Fish made a special appearance challenging the Texas court's personal jurisdiction over him, arguing that all of his actions in Texas were taken in contemplation of the formation of, or on behalf of, Technology. The trial court ruled it had proper jurisdiction.

Tandy then filed a motion for partial summary judgment, arguing:

1. Fish acted not for himself but on the behalf of Technology;
2. The letter agreement and all prior negotiations were merged into the distributorship agreement; and
3. The distributorship agreement is unambiguous and the parol evidence rule prohibits considering extrinsic evidence to modify its terms.

Before ruling, the trial court ordered all parties to file all claims related to the negotiations between the parties regarding Russia. Fish and Technology then filed counterclaims. Fish's counterclaims alleged fraud, arguing that Tandy had promised him the right of first refusal on an exclusive distributorship in the area west of Moscow when it was, in fact, negotiating with another person to whom it eventually awarded the distributorship. He further alleged breach of this purported Moscow agreement. The trial court then granted Tandy partial summary judgment specifically on the basis that all of

Fish's negotiations with Tandy on behalf of Technology regarding operations in Russia were merged into the distributorship agreement. It then ordered Technology and Tandy to arbitration.

Tandy then moved for summary judgment on Fish's counterclaims setting forth four bases:

1. Fish acted not for himself but on the behalf of Technology;
2. The letter agreement and all prior negotiations were merged into the distributorship agreement;
3. The distributorship agreement is unambiguous and the parol evidence rule prohibits considering extrinsic evidence to modify its terms; and
4. The trial court's previous partial summary judgment found "as a matter of law" that any and all negotiations were merged into the distribution agreement.

The trial court granted this summary judgment generally on all the arguments set forth in the motion and ordered that Fish take nothing.

Fish appeals the trial court's ruling on personal jurisdiction, its order to file all claims regarding the Russian negotiations, and both summary judgments.

PERSONAL JURISDICTION

Fish argues in his first point of error that he is not subject to personal jurisdiction in Texas. We disagree.

*Standard of Review*

When a defendant challenges a court's exercise of personal jurisdiction through a special appearance, he carries the burden of negating all bases of personal jurisdiction. See *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 (Tex.1982); *Nikolai v. Strate,* 922 S.W.2d 229, 236 (Tex.App.—Fort Worth 1996, writ denied); *Hayes v. Wissel,* 882 S.W.2d 97, 99 (Tex.App.—Fort Worth 1994, no writ). When a trial court overrules a special appearance, the defendant should

request it to make findings of fact according to Texas Rule of Civil Procedure 296. *See Runnells v. Firestone,* 746 S.W.2d 845, 849 (Tex.App.—Houston [14th Dist.] ), *writ denied,* 760 S.W.2d 240 (Tex.1988). Absent such findings, we view the trial court's judgment as impliedly finding all the necessary facts to support its judgment. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990): *In re W.E.R.,* 669 S.W.2d 716, 716–17 (Tex. 1984); *Runnells,* 746 S.W.2d at 848. Where a complete statement of facts appears in the record, however, these implied findings are not conclusive and an appellant may challenge the sufficiency of the evidence. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). Where such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *See id.*

■ When a personal jurisdictional question is reviewed, we review all the evidence. *See Nikolai,* 922 S.W.2d at 236; *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). But the review is not a de novo review. The proper standard for reviewing the evidence in a case involving a challenge to *in personam* jurisdiction is factual sufficiency. *See Nikolai,* 922 S.W.2d at 236; *Hotel Partners,* 847 S.W.2d at 632. Thus, we may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951); *Runnells,* 746 S.W.2d at 849. In reviewing such a point of error, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex. 1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct.

1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). So, considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 305, 320 S.W.2d 815, 816 (1959); *King's Estate,* 244 S.W.2d at 661.

■ If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the evidence. *See Worford,* 801 S.W.2d at 109; *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987); *Runnells,* 746 S.W.2d at 848. This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *See Harrington v. Railroad Comm'n,* 375 S.W.2d 892, 895 (Tex.1964); *Marifarms Oil & Gas, Inc. v. Westhoff,* 802 S.W.2d 123, 125 (Tex.App.— Fort Worth 1991, no writ).

### Law

■ For a Texas court to exercise personal jurisdiction over a nonresident, two conditions must be met—the Texas long-arm statute must authorize it and it must be consistent with the due process guarantees provided in our federal and state constitutions. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990); *Nikolai,* 922 S.W.2d at 233; *see also* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19; TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). Under the Texas long-arm statute, personal jurisdiction extends to nonresident defendants that either continuously and systematically "do business" in Texas or are parties to litigation arising from or related to "business" they conducted in Texas.[1] *See*

1. The Texas long-arm statute provides:
    In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
    (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
    (2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).

*O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966); *Nikolai,* 922 S.W.2d at 233.

The broad language of the Texas long-arm statute's "doing business" requirement has been construed to reach as far as the federal constitution allows. *See Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991); *see also Nikolai,* 922 S.W.2d at 234.

A plaintiff must meet two requirements to satisfy due process and justify the exercise of personal jurisdiction over a nonresident defendant. A plaintiff must first demonstrate that the nonresident defendant has purposefully established "minimum contacts" with Texas. *See Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 105, 107 S.Ct. 1026, 1028, 94 L.Ed.2d 92, 100 (1987); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); *Nikolai,* 922 S.W.2d at 234. Next, a plaintiff must show that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102; *Schlobohm,* 784 S.W.2d at 357; *Nikolai,* 922 S.W.2d at 234.

The first requirement, the minimum contacts analysis, has been well developed by the United States Supreme Court. Protecting the nonresident defendant is a fundamental purpose of the minimum contacts test. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980). This requires determining whether the nonresident defendant has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985). The "purposeful availment" requirement guarantees that a nonresident defendant will not be compelled to defend a suit in a jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *see also Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873,

80 L.Ed.2d 404, 412–13 (1984); *Nikolai,* 922 S.W.2d at 234. Moreover, nonresident defendants must have fair warning that particular activities may subject them to a foreign sovereign's jurisdiction. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181–82, 85 L.Ed.2d at 540–41; *Nikolai,* 922 S.W.2d at 234. A nonresident defendant must perform some overt act to subject it to the possibility of being compelled to defend a suit in a foreign court.

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41 (footnote omitted) (citations omitted).

■ When the contacts are the proximate result of the nonresident defendant's actions creating a substantial connection with the foreign state, exercising personal jurisdiction is proper. *See id.* at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 541–42; *see also Nikolai,* 922 S.W.2d at 234. The substantial connection between the forum state and the nonresident defendant, which is required for a finding of minimum contacts, must occur from the nonresident defendant's action or conduct purposefully directed toward the forum state. *See Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 541–42. A nonresident defendant's isolated contacts with the forum state or its residents are insufficient for a court to assert personal jurisdiction over that defendant. *See id.* at 475 n. 18, 105 S.Ct. at 2184 n. 18, 85 L.Ed.2d at 543 n. 18; *Nikolai,* 922 S.W.2d at 234. For there to be the necessary minimum contacts, there must be continuing contacts. *See Nikolai,* 922 S.W.2d at 234.

The minimum contacts analysis is divided into specific and general jurisdiction. In the present case, Tandy argues that the trial courts may exercise its jurisdiction over Fish on the basis of specific jurisdiction. When specific jurisdiction is asserted, the minimum

contacts requirement is satisfied if the cause of action arises from or relates to the nonresident defendant's contact with the forum state. *See Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411 n. 8; *Guardian Royal Exch.,* 815 S.W.2d at 227; *Nikolai,* 922 S.W.2d at 235. However, the nonresident defendant's purposeful conduct must have caused the contact, not the unilateral activity of the plaintiff or others. *See Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873, 80 L.Ed.2d at 412–13; *Nikolai,* 922 S.W.2d at 235. Additionally, the nonresident defendant must have "purposefully directed" its activities toward the forum, and the litigation must result from alleged injuries that arise from or relate to those activities. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41; *Nikolai,* 922 S.W.2d at 235. Thus, the minimum contacts analysis centers on the relationship among the defendant, the forum, and the litigation. *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872, 80 L.Ed.2d at 410–11; *Schlobohm,* 784 S.W.2d at 357; *Nikolai,* 922 S.W.2d at 235.

After a determination that a nonresident defendant has purposefully established minimum contacts with the forum state, the court must determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice" by evaluating the contacts in light of other factors. *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Nikolai,* 922 S.W.2d at 235. These factors include:

- the burden on the defendant;
- the interest of the forum state in adjudicating the dispute;
- the plaintiff's interest in obtaining convenient and effective relief;
- the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and
- the shared interest of the several states in furthering fundamental substantive social policies.

*See Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Nikolai,* 922 S.W.2d at 235. Thus, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case, even where a nonresident defendant has purposely established minimum contacts with the forum state. *See Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44; *Nikolai,* 922 S.W.2d at 235.

### The Texas Formula

■ Texas courts have fashioned their own formula for assuring compliance with the federal constitutional standard for exercising personal jurisdiction over a nonresident defendant. The nonresident defendant must have first purposefully established minimum contacts with Texas. *See Guardian Royal Exch.,* 815 S.W.2d at 230; *Nikolai,* 922 S.W.2d at 235. It is not the number, but rather the quality and nature, of the nonresident defendant's contacts with the forum state that is important. *See Nikolai,* 922 S.W.2d at 235. There must be a *substantial connection* between the nonresident defendant and Texas that arises from the nonresident defendant's action or conduct purposefully directed toward Texas. *See Guardian Royal Exch.,* 815 S.W.2d at 230; *Nikolai,* 922 S.W.2d at 235.

■ When a plaintiff asserts specific jurisdiction, the cause of action must arise from or relate to the nonresident defendant's contacts with Texas. *See Guardian Royal Exch.,* 815 S.W.2d at 230; *Schlobohm,* 784 S.W.2d at 357; *Nikolai,* 922 S.W.2d at 235–36. Lastly, the assumption of personal jurisdiction must comport with "fair play and substantial justice." The factors for making this determination are the same as the factors in the federal due process test set forth above. *See Nikolai,* 922 S.W.2d at 236. However, when applying the jurisdictional formula to a particular case, we must weigh the facts carefully and avoid the mechanical application of any test, including the Texas formula. *See Guardian Royal Exch.,* 815 S.W.2d at 231; *see also Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44.

### Discussion

■ In this case, the evidence reveals that Fish has purposefully established minimum contacts with Texas. In 1992 and 1993,

he negotiated and contracted with Tandy, a Texas Corporation based in Fort Worth, for distributorships in Russia. Their agreements were negotiated through personal visits by Fish to Texas and through telephone, mail, and facsimile communications to and from Texas. Fish executed the letter agreement in his individual capacity, not as Technology's agent or promoter. Additionally, Fish paid Tandy $60,000 in Texas from his personal account when he returned the distributorship agreement. Fish admits in his own affidavit that he entered into negotiations with Tandy, that their discussions took place by telephone, facsimile, and mail, and that he visited Texas three times. During most, if not all, of the parties' negotiations, Technology was not yet a corporation. The record indicates that its articles of incorporation were filed October 25, 1993. All correspondence in the record from Fish to Tandy is on his personal stationery and signed by him individually. Thus, Fish has purposefully established minimum contacts with Texas.

Tandy argues that the Texas trial court has specific jurisdiction over Fish. Accordingly, we next must consider whether these contacts are sufficient to justify an exercise of jurisdiction over Fish in the present case, i.e., whether there is a *substantial connection* between Fish and Texas that arises from his action or conduct purposefully directed toward Texas. *See Guardian Royal Exch.*, 815 S.W.2d at 230; *Nikolai*, 922 S.W.2d at 235.

As a consequence of disagreements arising between Tandy and Fish regarding their rights and duties under the distributorship agreement and the letter agreement, Tandy sued Fish asking the trial court for a declaratory judgment defining the rights of the parties involved. The letter agreement and the distribution agreement were agreements arising directly from the negotiations between Tandy and Fish involving personal visits by Fish to Texas and telephone, mail, and facsimile communications to and from Texas. This is probative and significant evidence that Fish's claims relate to or arise from his contact with Texas, and such a determination is not so contrary to the over-whelming weight of the evidence as to be manifestly wrong. Consequently, the trial court's determination that it could assert specific jurisdiction over Fish was proper.

▪ Because we hold that a Texas court's exercise of jurisdiction in these circumstances withstands a minimum contacts analysis, we next determine whether this exercise of jurisdiction comports with fair play and substantial justice. *See Asahi*, 480 U.S. at 113–15, 107 S.Ct. at 1032–34, 94 L.Ed.2d at 105–07; *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Nikolai*, 922 S.W.2d at 235. "Because the minimum contacts analysis now encompasses so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail a fair play analysis." *Schlobohm*, 784 S.W.2d at 357–58; *see also Nikolai*, 922 S.W.2d at 239. "Only in rare cases ... will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch.*, 815 S.W.2d at 231; *see also Nikolai*, 922 S.W.2d at 239. However, the Texas Supreme Court recently held the exercise of jurisdiction did not comport with fair play and substantial justice in *CMMC v. Salinas*, 929 S.W.2d 435, 440 (Tex.1996).

The *CMMC* court found that the defendants did not purposefully avail themselves of the Texas market simply by selling a winepress in Texas because their equipment was not regularly sold in Texas, they made no effort to market their equipment specifically in Texas, and the Texas sale appeared to be an isolated event. *See id.* at 439. This is wholly dissimilar from the present case where Fish actively sought to do business with a Texas corporation, negotiated with a Texas corporation over a significant period of time, and contracted with that Texas corporation.

The factors for determining whether assertion of personal jurisdiction over a non-resident defendant is fair and reasonable weigh against Fish. *See Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44; *Nikolai*, 922 S.W.2d at 235. We cannot conclude it would be a significant burden on Fish to defend a lawsuit here

because he has traveled to Texas on various occasions to further his business interests here. Moreover, at least one agreement at issue in this lawsuit compels arbitration in Texas. Accordingly, Texas has a significant interest in adjudicating the dispute. Further, attempting to resolve these issues in separate lawsuits conducted in California and Texas would run counter to judicial economy and assuredly would not further the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *See Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Nikolai,* 922 S.W.2d at 235.

Considering the extent and duration of Fish's negotiations with Tandy, a Texas corporation, his numerous direct communications with Tandy, his admission that he visited Texas as least three times specifically to facilitate the distribution of Tandy products, and his individual execution of a written letter agreement directly arising from these negotiations, we conclude that requiring Fish to submit to the jurisdiction of Texas courts does not offend traditional notions of fair play and substantial justice.

Therefore, the trial court properly found it had jurisdiction over Fish. Accordingly, we overrule point of error one and affirm the trial court's order overruling Fish's challenge to its jurisdiction.

### ORDER TO FILE ALL CLAIMS

▇ In his next point of error, Fish complains of the trial court's order requiring him to file all claims. The trial court in fact ordered *all* parties to file "all claims and causes of action, including any third party actions, that any may have arising out of the negotiations conducted by Leonard Fish individually or on behalf of Technology Stores, Inc. with Tandy Corporation." Fish may not present this argument on appeal because he did not properly preserve any error.

▇ To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if those grounds are not apparent from the context of the request, objection, or motion. *See* TEX.R.APP. P. 52(a); *see also* TEX.R. CIV. EVID. 103(a)(1). An objection is specific enough to preserve error only if it identifies the objectionable matter or event sufficiently for the other party to cure any deficiency and enables the trial judge to know the nature of the alleged error. *See* TEX.R.APP. P. 52(a); TEX.R. CIV. EVID. 103(a)(1); *PGP Gas Prod., Inc. v. Fariss,* 620 S.W.2d 559, 560 (Tex.1981). Moreover, the objecting party must get a ruling from the trial court. *See* TEX.R.APP. P. 52(a). If a party fails to present to the trial court a timely and specific request, objection, or motion and obtain a ruling, error is not preserved, and the complaint is waived. *See Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

In the present case, Fish did not object to the trial court that it erred by requiring him to file all his claims. In his counterclaim, he states that his claims were "subject to" his objection to the trial court's jurisdiction. However, this objection is not specific enough to preserve any error regarding the trial court's order that he file all claims. Moreover, the trial court never ruled on this objection. Thus, Fish has waived any error regarding this trial court order.

Accordingly, we overrule point of error two and affirm the trial court's order requiring all parties to file all claims arising from the negotiations between Fish, individually or on behalf of Technology, with Tandy.

### SUMMARY JUDGMENTS

Fish argues in his next two points of error that each of the trial court's summary judgments was improper because Tandy failed to show there were no genuine issues of material fact and that it was entitled to the judgments as a matter of law. We agree.

### *Standard of Review*

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek*

Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *see Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *See Great Am.*, 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See City of Houston*, 589 S.W.2d at 678. A summary judgment will be affirmed on appeal if any of the theories advanced in the motion for summary judgment are meritorious. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### Second Summary Judgment

Because the trial court ruled in its second summary judgment that Fish does not have standing to assert any individual claims against Tandy and takes nothing, the issue addressed in the first summary judgment, whether Fish can assert individual claims against Tandy, would be moot if we affirmed the second summary judgment. Accordingly, we first turn to the trial court's second summary judgment. We can affirm this summary judgment only if any of the theories advanced in Tandy's motion for summary judgment are meritorious. *See Carr*, 776 S.W.2d at 569. In its motion, Tandy set

forth essentially four grounds for summary judgment: (1) Fish acted not for himself but on the behalf of Technology; (2) the letter agreement and all prior negotiations were merged into the distributorship agreement; (3) the distributorship agreement is unambiguous and the parol evidence rule prohibits considering extrinsic evidence to modify its terms; and (4) the trial court's previous partial summary judgment found "as a matter of law" that any and all negotiations were merged into the distributorship agreement.

■ Fish could not act as agent for a nonexistent corporation. A nonexistent corporation can have no agent. *See Cator v. Commonwealth Bonding & Cas. Ins. Co.*, 216 S.W. 140, 142 (Tex.Com.App.1919, judgm't adopted); *Weatherford, M.W. & N.W. Ry. Co. v. Granger*, 86 Tex. 350, 353, 24 S.W. 795, 796 (1894); *Cavaness v. General Corp.*, 272 S.W.2d 595, 598 (Tex.Civ.App.—Dallas, 1954), *aff'd*, 155 Tex. 69, 283 S.W.2d 33 (1955). Thus, he could only act in contemplation of the formation of a corporation—as a promoter.

■ When a promoter enters a contract on behalf of an unformed corporation, he is personally liable on the contract unless there is an agreement with the contracting party that the promoter is not liable. *See Bibbee v. Root Glass Co.*, 128 Tex. 220, 222, 96 S.W.2d 975, 976 (1936); *Aloe Ltd. v. Koch*, 733 S.W.2d 364, 366, (Tex.App.—Corpus Christi 1987, no writ). Absent such an agreement, a promoter is personally liable unless the contract is made in the name and on the credit of the proposed corporation and the contracting party knows that the corporation does not yet exist. *See Aloe Ltd.*, 733 S.W.2d at 366; *Schwedtman v. Burns*, 11 S.W.2d 348, 349–50 (Tex.Civ.App.—El Paso 1928, no writ); *see also Granger*, 24 S.W. at 796.

A promoter, though he purport to act on behalf of the projected corporation, and not for himself, cannot be treated as agent, because the nominal principal is not then in existence; and hence, where there is nothing more than a contract by a promoter, in which he undertakes to bind the future corporation, it is generally conceded

that it cannot be enforced. The promoters themselves are liable upon the contract, unless the person with whom they engage agrees to look to some other fund for payment.

*Granger*, 24 S.W. at 796 (citations omitted). Otherwise, a promoter is relieved of personal liability only when the corporation subsequently adopts the contract either expressly or by accepting its benefits. *See Coastal Shutters & Insulation, Inc. v. Derr*, 809 S.W.2d 916, 920 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Aloe Ltd.*, 733 S.W.2d at 367; *Cavaness*, 272 S.W.2d at 598–99; *Weeks v. San Angelo Nat'l Bank*, 65 S.W.2d 348, 349 (Tex.Civ.App.—Austin 1933, writ ref'd).

▮ Thus, notwithstanding assertions that he acted solely in contemplation of the formation of a corporation, a promoter can be personally liable for entering into a contract for an unformed corporation. *See Stephens v. Felix Mexican Restaurant, Inc.*, 899 S.W.2d 309, 314 n. 9 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *Aloe Ltd.*, 733 S.W.2d at 366. Because any enforceable agreement is mutual and binding on both parties, logic dictates a promoter who is liable under an agreement may also make a claim under such a contract.

▮ Accordingly, Fish's admission that he acted only in contemplation of Technology's formation would not preclude any agreements that he entered individually, or on Technology's behalf, from binding him individually. Absent proof that Technology adopted the agreements at issue after its incorporation or that the agreements at issue were in Technology's name and that Tandy and Fish agreed at the time of contracting Tandy would look only to Technology's credit, Fish may be bound individually. Likewise, Tandy may be bound to Fish individually.

▮ Tandy has not alleged that Technology adopted all Fish's actions taken in contemplation of its formation. Furthermore, only the distributorship agreement was made in the name of Technology. No summary judgment evidence was offered to prove that Technology adopted any purported agreements between Fish and Tandy. Fish argues that he individually has an agreement with Tandy granting him a right of first refusal on a distributorship "in and around Moscow," and he offers his personal affidavit as evidence. This is sufficient to raise a fact issue regarding whether such an agreement exists. Accordingly, the theory that Tandy is entitled to summary judgment because Fish acted not for himself but on the behalf of Technology will not support this summary judgment.

▮ We next turn to Tandy's assertion that the letter agreement and all prior negotiations merged into the distributorship agreement. In contract cases, the "merger doctrine" is an analogue of the parol evidence rule. Merger refers to the absorption of one contract into another subsequent contract and is largely a matter of intention of the parties. *See Pitman v. Lightfoot*, 937 S.W.2d 496, 529 (Tex.App.—San Antonio 1996, no writ); *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 701 (Tex. App.—El Paso 1993, no writ): *Smith v. Smith*, 794 S.W.2d 823, 827 (Tex.App.—Dallas 1990, no writ). Merger happens when the *same* parties to an earlier agreement later enter into a written integrated agreement covering the *same* subject-matter. *See Pitman*, 937 S.W.2d at 529; *Leon Ltd.*, 862 S.W.2d at 700: *Boy Scouts of Am. v. Responsive Terminal Sys. Inc.*, 790 S.W.2d 738, 744 (Tex.App.—Dallas 1990, writ denied). Whether merger occurs, or whether another agreement is simply supplemental and does not contradict a written contract, is determined from the parties' intent. *See Pitman*, 937 S.W.2d at 529; *Smith*, 794 S.W.2d at 827–28; *Smith v. United States Nat'l Bank of Galveston*, 767 S.W.2d 820, 823 (Tex. App.—Texarkana 1989, writ denied). Absent pleading and proof of ambiguity, fraud, or accident, a written instrument presumes that all the parties' earlier agreements relating to the transaction have merged into the written instrument. *See Pitman*, 937 S.W.2d at 529; *Boy Scouts of Am.*, 790 S.W.2d at 745.

▮ However, before one contract is merged into another, the last contract must be between the *same* parties as the first, must embrace the *same* subject matter, and

must have been so intended by the parties. *See Smith,* 794 S.W.2d at 828. Moreover, a subsequent integration will not supersede or invalidate a written agreement relating to the same subject matter if the agreement is such that might naturally be made as a separate agreement. *See id.; see also Morgan v. Stover,* 511 S.W.2d 362, 364 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.). But when the parties to one contract execute another that has terms so inconsistent with the first that they both cannot stand, courts conclusively presume the first agreement is superseded by the second. *See Smith,* 794 S.W.2d at 828; *Balboa Ins. Co. v. K & D & Assocs.,* 589 S.W.2d 752, 758 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). A written merger clause such as the one in the distribution agreement is essentially a memorialization of the merger doctrine. *See Smith,* 794 S.W.2d at 828.

■■■■ In the present case, as a matter of law, the letter agreement and the distribution agreement cannot merge because the two agreements are between different parties. The letter agreement provides, "[t]he purpose of this letter is to confirm the agreement between Leonard Fish ... and the Radio Shack Division of Tandy Corporation ... with regard to the distribution of Radio Shack products in Western Russia." It is executed by C.C. Atfield as vice president of Radio Shack International and by Leonard Fish individually. The distribution agreement provides that the agreement is "between RADIO SHACK INTERNATIONAL, a division of TANDY CORPORATION, a Delaware U.S.A. corporation, ... and Technology Stores, a Delaware corporation." It is executed by C.C. Atfield as vice president of Radio Shack International, a division of Tandy Corporation, and Leonard Fish as president of Technology Stores. Fish individually and Technology are not the same party. Tandy offers no evidence or arguments regarding who the parties to the purported Moscow agreement may be. It simply contends that if it exists at all, it is merged into the distributorship agreement. Fish contends the parties are Fish individually and Tandy. Therefore, this remains a fact question. Accordingly, Tandy's argument that the letter agreement and all prior negotiations were merged into the distributorship agreement also will not support this summary judgment.

■■■■ Absent merger of all purported agreements into the distributorship agreement, the parol evidence rule will not bar admission of evidence of other agreements. *See Pitman,* 937 S.W.2d at 529; *Leon Ltd.,* 862 S.W.2d at 701; *Smith,* 794 S.W.2d at 827. Thus, this theory also does not support the summary judgment. Accordingly, the only ground remaining to support this summary judgment is Tandy's argument that the first summary judgment found as a matter of law that all negotiations were merged into the distributorship agreement. So, we now consider the first summary judgment.

### First Summary Judgment

■■■■ The trial court granted its first summary judgment specifically on the basis of merger. The judgment provided:

> In support of its decision, the Court finds, as a matter of law, that any and all negotiations prior to October 12, 1993 by Leonard Fish or by Leonard Fish on behalf of Technology Stores, Inc. which relate in any manner to Radio Shack operations in Russia were merged into the Radio Shack License and Distribution Agreement dated October 12, 1993.

However, under the Texas Supreme Court's recent holding in *Cincinnati Life,* we may, in the interest of judicial economy, affirm a summary judgment on specific grounds if any theory advanced is meritorious. *Cincinnati Life,* 927 S.W.2d at 626.

In its motion for partial summary judgment, Tandy advanced three arguments: (1) Fish acted not for himself but on the behalf of Technology; (2) the letter agreement and all prior negotiations were merged into the distributorship agreement; and (3) the distributorship agreement is unambiguous and the parol evidence rule prohibits considering extrinsic evidence to modify its terms. Each of these arguments was also advanced in support of the second summary judgment, and will not support summary judgment for Tandy.

Thus, we cannot support either summary judgment on any theory advanced in either of Tandy's motions for summary judgment. Accordingly, we sustain Fish's third and fourth points of error, reverse both summary judgments, and remand this case to the trial court for proceedings consistent with this opinion.

CONCLUSION

In summary, the trial court properly exercised personal jurisdiction over Fish. Additionally, the trial court properly required all parties to file all claims. As a matter of law, agreements that are not between the same parties cannot merge. Moreover, Fish's admissions that he acted on the behalf of Technology will not preclude his individual liability for actions taken as a promoter that were not subsequently adopted by the corporation. If he is individually liable, he may likewise have individual claims. Consequently, we affirm the trial court's order denying Fish's challenge to its jurisdiction and its order to all parties to file all claims relating to their negotiations; we reverse the trial court's summary judgments and remand this case to the trial court for proceedings consistent with this opinion.