SUPERIOR LAMINATE & SUPPLY,
INC., Appellant,

v.

FORMICA CORPORATION, Appellee.

No. 14–00–00081–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 10, 2002.

Claude R. Treece, David S. Elder, Geoffrey H. Bracken, James G. Munisteri, Stacy R. Obenhaus, Houston, for appellant.

Brian F. Antweil, Houston, for appellee.

* Senior Justice Don Wittig sitting by assignment.

Panel consists of Justices YATES, EDELMAN, and WITTIG.*

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

A distributor sued its former supplier, asserting claims for breach of contract, fraud, and promissory estoppel. Based on some of the jury's findings, the trial court disregarded other findings and entered a take-nothing judgment against the distributor. We affirm.

### Factual and Procedural Background

Superior Laminate & Supply, Inc., was formed in June 1989 for the purpose of becoming an exclusive distributor for Formica Corporation in the greater Houston area. According to Superior's president, Paul Clark, during the negotiations leading to the creation of Superior and its distributorship agreement with Formica, Formica's regional and national sales managers assured him that Formica would not terminate their relationship for as long as Superior continued to sell Formica products. Superior leased space in Houston, purchased $400,000 in inventory from Formica, hired approximately twenty employees, and otherwise purchased equipment for Superior's use as Formica's distributor.

Some time after January 1990, Clark's father, McGinnis "Mac" Clark, on behalf of Superior,[1] signed a written Distributor Agreement with Formica. This form agreement, apparently drafted by Formica, included the following provision:

> Either party may terminate this Agreement with or without cause effective on any date after the date hereof by giving to the other party written notice of such

1. Mac Clark signed the Distributor Agreement in his capacity as Secretary/Treasurer of Superior.

termination at least sixty (60) days prior to such effective date.

By letter dated August 17, 1990, Formica delivered a copy of the signed Distributor Agreement to Mac Clark at Superior. By its terms, this agreement expired on December 31, 1991. The parties continued doing business without a signed agreement from January 1992 until April 1993, when Paul Clark signed a new Distributor Agreement with Formica. This second agreement expired on December 31, 1993, but it was extended by agreement for one year until December 31, 1994. Toward the end of 1994, Formica sent Clark another Distributor Agreement that would run through 1998; however, Clark refused to sign it. The parties continued operating without any written agreement from January 1, 1995, until the relationship was terminated.

On July 25, 1996, Formica informed Superior it was terminating its distributor agreement with Superior, effective September 30, 1996. Superior responded by bringing this suit on August 30, 1996. Superior claims Formica agreed and promised that Superior would remain a Formica distributor as long as Superior continued to promote Formica's products and that Formica would not terminate Superior without good cause. Following a four-day trial, the court submitted a jury charge consisting of nineteen questions. With respect to breach of contract, the jury found the parties agreed that Superior would be Formica's exclusive distributor in Houston, terminable only if Superior ceased promoting and selling Formica's products, but the jury failed to find that Formica breached this agreement. The jury also found (1) Superior foreseeably and detrimentally relied on Formica's promise that it would not terminate the relationship as long as Superior promoted and sold Formica's products and (2) Formica committed fraud against Superior. However, the jury further found Superior should have discovered no later than August 17, 1990—more than four years before the lawsuit was filed—that Formica's promise was false and that Formica had committed fraud. The trial court disregarded the jury's answers on promissory estoppel and fraud and entered a take-nothing judgment in favor of Formica.

## Fraud

In its first issue, Superior argues the trial court should have entered judgment against Formica on Superior's fraud claim. In response to Question 6 of the jury charge, the jury found that Formica committed fraud against Superior. However, Question 6A asked, "By what date should Superior in the exercise of reasonable diligence have discovered Formica's fraud, if any?" The jury answered "August 17, 1990," which is the same date Formica delivered the first Distributor Agreement to Mac Clark at Superior. Based on this answer, Formica asked the trial court to disregard the jury's answer to Question 6 because Superior's fraud claim was barred by the statute of limitations. The trial court granted Formica's request.

To avoid limitations, Superior was required to bring its fraud claim within four years of when the claim accrued. *See Williams v. Khalaf*, 802 S.W.2d 651, 657–58 (Tex.1990). A fraud claim does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996); *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1943).

Superior claims there is no evidence to support the jury's answer to Question 6A. Superior does not challenge the sufficiency of the evidence supporting the jury's finding that it knew or should have known of

Formica's wrongful act by August 17, 1990. Instead, Superior argues it did not suffer an actual injury until 1996, when Formica terminated the distributorship. Thus, Superior alleges it could not possibly have discovered its injury resulting from Formica's fraud before then. We disagree.

■ Superior's petition alleges that Formica's misrepresentations induced the creation of Superior, resulting in damages "including the loss of value of investment made in establishing the distributorship." Thus, for limitations purposes, Superior's injury was suffered as soon as it made any investment in reliance on Formica's false promise that the distributorship would not be terminated without good cause. As soon as Superior discovered (or should have discovered) that Formica in fact could terminate Superior with sixty days' notice, regardless of cause, Superior knew (or should have known) that (1) Formica's earlier statements were false and (2) Superior had invested considerable money in detrimental reliance on a false promise. Thus, Superior's fraud claim accrued at that time, even if Superior was unaware of the full extent of its damages. *See Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438, 440 (1940).

We find there is legally sufficient evidence to support the jury's finding that Superior should have discovered Formica's fraud no later than August 17, 1990, the date it received a copy of the signed Distributor Agreement. Superior did not bring suit on its fraud claim until August 30, 1996, over six years later. Superior's fraud claim is thus barred by limitations, and the trial court did not err in disregarding the jury's answer to Question 6. We overrule Superior's first issue.

## Novation

In its second issue, Superior claims the trial court committed reversible error in submitting a novation instruction to the jury in connection with Superior's breach-of-contract claim. In response to Question 1, the jury found that Formica and Superior had agreed that Formica could terminate Superior as its exclusive distributor in the Houston area only if Superior ceased promoting and selling Formica's products. Question 2 then asked the jury whether Formica failed to comply with the agreement. The trial court instructed the jury that "[f]ailure to comply with one agreement is excused if the parties agreed that a new agreement would take its place." The jury answered "no" to Question 2.

■ Superior argues the trial court's instruction was improper because it instructs the jury on the affirmative defense of novation, which Formica did not plead, and thus Superior was surprised by its inclusion in the charge. For an instruction to be proper, it must find support in the pleadings and the evidence. *See Texas Workers' Comp. Ins. Fund v. Mandlbauer,* 34 S.W.3d 909, 912 (Tex.2000). However, an incorrect jury instruction is only grounds for reversal if it probably caused the rendition of an improper judgment. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001). To determine whether the instruction resulted in an improper judgment, we examine the entire record. *Id.*

■ Novation, or the substitution of a new agreement in place of an existing agreement between the same parties, is an affirmative defense to a claim for breach of contract. *See Honeycutt v. Billingsley,* 992 S.W.2d 570, 576–77 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). Although Formica did not plead novation, it did plead that Superior's claims are barred by the doctrine of merger. A merger occurs when the same parties to an earlier agreement later enter into a written integrated

agreement covering the same subject matter. *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex.App.-Fort Worth 1997, writ denied). Whether merger occurs is determined by the parties' intent. *Id.* Formica contends that the challenged instruction was properly submitted based on its merger defense.[2]

■ Superior concedes that "application of the merger doctrine has the same effect as the application of the novation doctrine—where the doctrine is applicable, the new contract will supplant the old." Given that the result under either affirmative defense—one pleaded and one not—would be the same, Superior has not established that the trial court's instruction probably caused an improper judgment. Superior further admits it "knew by the pleaded merger affirmative defense that Formica intended to argue that the second contract supplanted the oral contract." Thus, Superior has not demonstrated it was unfairly surprised by the inclusion of this instruction. Even if we were to conclude the trial court's instruction was incorrect, Superior has not established sufficient grounds for reversing the judgment. Accordingly, we overrule Superior's second issue.

### Promissory Estoppel

In its third and fourth issues, Superior asserts the trial court erred in refusing to enter judgment on its promissory-estoppel claim. In response to Question 4, the jury found that Superior substantially and foreseeably relied to its detriment on Formica's promise that Superior would continue as Formica's exclusive Houston distributor

as long as Superior promoted and sold Formica's products. *See Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (setting forth the elements of promissory estoppel). The jury further found Superior suffered damages resulting from its reliance on Formica's promise. In its post-trial motion, Formica argued these findings should be disregarded based on the jury's finding that a valid agreement existed between Formica and Superior, and the trial court agreed.

■ We conclude the trial court properly disregarded the jury's findings relating to Superior's promissory-estoppel claim. As our supreme court stated in *Wheeler v. White*, "[t]he function of the doctrine of promissory estoppel is, under our view, defensive in that it estops a promisor from denying the enforceability of the promise." 398 S.W.2d 93, 96 (Tex. 1965). Promissory estoppel operates to enforce an otherwise unenforceable promise; "[i]t cannot replace an enforceable contract." *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 754 (Tex.App.-San Antonio 1998, no pet.).

■ Superior does not dispute that the existence of a valid agreement invalidates a promissory-estoppel claim, but instead contends Formica waived this argument by failing to object to the unconditional submission of the promissory-estoppel question.[3] However, Formica's post-trial motions did not assert any error regarding the form of the charge. Rather, Formica argued that, where a valid agreement is found to exist, a promissory-estoppel claim

---

**2.** We note, however, the trial court's instruction is identical to the instruction on novation contained in the Texas Pattern Jury Charges. *See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—Business, Consumer, Employment PJC 101.30 (1997).

**3.** In other words, Superior contends Formica should have objected to the fact that Question 4 was neither predicated on a "no" answer to Question 1 (regarding the existence of an agreement) nor asked in the alternative.

based on the same operative facts cannot survive, and any findings on that claim should be disregarded. A party is not required to object to the charge to complain later that a finding is immaterial. *Ballesteros v. Jones,* 985 S.W.2d 485, 499 (Tex.App.-San Antonio 1998, pet. denied). The trial court properly disregarded the jury's findings with respect to this claim. We overrule Superior's third issue.

In its fourth issue, Superior claims the jury question relating to the defense of limitations on its promissory-estoppel claim was improper. Based on our resolution of Superior's third issue, we need not address this point.

The trial court's judgment is affirmed.

EDELMAN, J., dissents.

RICHARD H. EDELMAN, Justice, dissenting.

I agree with the majority opinion except with regard to overruling Superior's first issue, challenging the sufficiency of the evidence to support the jury's finding that Superior should have discovered Formica's fraud by August 17, 1990. In particular, I differ with the majority's statement that "for limitations purposes, Superior's injury was suffered as soon as it made any investment in reliance on Formica's false promise [the "promise"] that the distributorship would not be terminated without good cause." Where, as in this case, an alleged fraudulent inducement consists of making a contractual promise with no intent to perform it, I do not agree that an injury is suffered before an actual failure or refusal to perform is manifested.

In this case, from 1990 to 1994, the period in which the majority holds that the limitations period on the fraud claim was running, and for two years thereafter, the parties were in an active contractual relationship in which Formica neither breached nor threatened to breach the promise. During that period, Superior was in no worse position economically than if the alleged fraud had not occurred and, importantly, *might never be.* That is, whatever Formica's intent might have been in entering into the contract, that intent might never have resulted in an actual breach. Instead, the contract might have continued indefinitely or have been terminated for reasons unrelated to Formica's alleged intent not to perform. In that event, Superior's investment in reliance on Formica's false promise would never have been an injury, and can only be argued now to have been an injury then by hindsight based on facts occurring six years after the date the majority concludes that the limitations period began to run.

Moreover, what useful purpose is served by compelling a party to a productive contractual arrangement to sue the other for entering into the contract without an intent to perform while the other party is, in fact, performing satisfactorily? In addition to straining the parties' ability to continue their dealings, how can liability be found or damages be calculated where a plaintiff has been receiving everything it bargained for? And if a breach does later occur, does it promote judicial economy to potentially require two lawsuits over largely the same facts? Because I disagree with the majority's conclusion that Superior suffered an injury at the time it made an investment in reliance on Formica's allegedly false promise, I would sustain Superior's first issue and reverse the corresponding portion of the trial court's judgment.