**DION DURRELL & ASSOCIATES, INC., Appellants,**

**v.**

**S.J. CAMP & COMPANY, Appellee.**

**No. 12–03–00430–CV.**

Court of Appeals of Texas, Tyler.

May 12, 2004.

---

Richard H. Gateley, Brackett & Ellis, FortWorth, for appellant.

J. Brad McCampbell, Curtis, Alexander, McCampbell & Morris, Emory, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and DeVASTO, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Dion Durrell & Associates, Inc. ("Dion") appeals the trial court's denial of its special appearance [1] in a suit brought by S.J. Camp & Company ("Camp"). Dion raises one issue on appeal. We affirm.

### FACTUAL BACKGROUND

Camp is a reinsurance intermediary [2] located in Emory, Texas. In December 1999, National Health Insurance Company ("NHIC") of Grand Prairie, Texas contacted Camp regarding NHIC's reinsurance needs. NHIC and Camp reached an agreement whereby Camp would act as the sole reinsurance intermediary between NHIC, the reinsured, and a reinsurer. While seeking a reinsurer, Camp contacted Dion, a Canadian insurance intermediary located in Toronto, Ontario.

On February 2, 2000, Robert Martin ("Martin") and Steve Prince ("Prince") traveled to Grand Prairie to meet with Camp and NHIC representatives. The meeting resulted in NHIC agreeing to pay Dion a fee of more than $100,000.00 to structure a reinsurance proposal to be submitted to a potential reinsurer.

On July 25, 2000, Martin again went to Grand Prairie with Camp in order to meet

---

1. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2004).

2. Camp is a corporate entity that engages in business with insurance companies who seek to reinsure policies they have written.

with representatives of NHIC and Allianz Risk Transfer (Bermuda), Limited ("Allianz Bermuda"), a reinsurance company. On August 1, 2000, NHIC sent a letter to Camp (the "August 1 letter") acknowledging that Camp was the only authorized intermediary for obtaining reinsurance for NHIC during 1999, 2000, and 2001. The August 1 letter further stated that Camp was the "broker of record" and that the broker of record letter extends to Dion and Allianz Bermuda. On August 17, 2000, NHIC and Allianz Bermuda reached an agreement concerning reinsurance.

On March 15, 2001, NHIC and Allianz Bermuda signed an annual renewal term reinsurance agreement effective January 1, 2000. The agreement stated that the reinsurance agreement was to be performed in Texas and that "this agreement shall be interpreted in accordance with the laws of the State of Texas." However, the agreement also stated, "[T]here is no intermediary associated with this business of this agreement. All reports and remittances are to be made directly between the parties."

### PROCEDURAL BACKGROUND

On July 22, 2002, Camp filed suit against NHIC, Dion, Allianz Risk Transfer, Inc., and Allianz Bermuda[3] alleging that the defendants (1) had breached the agreement that Camp would be the reinsurance intermediary for NHIC during the years of 1999, 2000, and 2001, (2) had interfered with Camp's existing contractual relations, and (3) had conspired to interfere with said contractual relations. On August 26, 2002, Dion filed its special appearance, and subsequently filed its amended special appearance. Following a hearing on June 27, 2003, the trial court denied Dion's special appearance and entered the following findings of fact and conclusions of law:

1. Plaintiff, S.J., Camp & Company (CAMP), a reinsurance intermediary, is a corporation duly organized under the laws of the State of Texas.

2. Defendant, National Health Insurance Company (NHIC), is a health insurance company duly organized under the laws of the State of Texas.

3. DION is a foreign actuarial and insurance consulting firm licensed under the laws of the Province of Ontario, Canada. DION's principal place of business is in Toronto, Ontario, Canada. DION has no place of business, office, mailing address, telephone number, employees or property within Texas.

4. NHIC authorized Camp to act as Broker of Record from December 15, 1999 forward for the Financial Reinsurance on Policy Form USA—100 for the issue years of 1999, 2000 and 2001.

5. In January 2000, Camp by and through Steven J. Camp, contacted DION by phone and fax to discuss the reinsurance needs of NHIC.

6. In January 2000, CAMP mailed DION underwriting materials for review.

7. In February 2000, Steven J. Camp met with DION's representatives at the DFW Marriott Hotel to discuss the reinsurance needs of NHIC and later transported those representatives to the offices of NHIC in Grand Prairie, Texas for meetings with representatives of NHIC.

8. On July 25, 2000, Steven J. Camp met with a representative of DION

3. Allianz Risk Transfer, Inc. is a corporation organized under the laws of the State of New York with its principal place of business in New York City. Allianz Bermuda is incorporated under the laws of Bermuda and is located in Hamilton, Bermuda.

who flew to DFW Airport where CAMP transported him to the offices of NHIC in Grand Prairie, Texas for a second meeting with NHIC.

9. Other than the above, no employees of DION have ever traveled to Texas to meet with any of the parties.

10. Arising out of those meetings in Texas, DION agreed to structure a reinsurance proposal for NHIC and entered into a contract with NHIC for this purpose.

11. NHIC and CAMP entered into separate written confidentiality agreements with DION regarding disclosure of DION's proprietary information. The confidentiality agreements provide that they "shall be governed and construed in accordance with the laws of the Province of Ontario and laws of Canada applicable therein." DION had entered into no other written contracts with CAMP or NHIC.

12. NHIC agreed to pay DION a sum of money to structure a reinsurance proposal to be submitted to a potential reinsurer.

13. During the course of dealings between NHIC, CAMP and DION, there were many communication exchanges in the form of telephone, facsimile, and e-mail between those parties with regards to the financial reinsurance needs of NHIC.

14. DION did not waive its special appearance by filing its Motion to Transfer Venue subject to Special Appearance.

15. DION did not waive its special appearance by raising the issue of jurisdictional defects.

16. The State of Texas does not have general jurisdiction over DION, as DION does not have substantial enough contacts with the State of Texas to give rise to general jurisdiction over a non-resident.

17. The State of Texas does not have general jurisdiction over DION, as CAMP has alleged sufficient facts to give the Court specific jurisdiction over DION in this cause of action.

On appeal, Dion contends that the trial court erred in concluding that it had specific jurisdiction over Dion.

### STANDARD OF REVIEW

The plaintiff has the burden to plead a prima facie showing of jurisdiction. *Haught v. Agricultural Prod. Credit,* 39 S.W.3d 252, 256 (Tex.App.-Tyler 2000, pet. denied). In a special appearance, the non-resident defendant has the burden of proof to negate all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). On appeal, we determine the special appearance on the basis of the pleadings, any stipulations by and between the parties, such affidavits and attachments as may be filed by the parties, the result of discovery processes, and any trial testimony. TEX.R. CIV. P. 120a; *De Prins v. Van Damme,* 953 S.W.2d 7, 18–19 (Tex.App.-Tyler 1997, pet. denied). Whether a court has personal jurisdiction over a defendant is a question of law and, therefore, our review is de novo. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). Texas courts may exercise jurisdiction over nonresidents if they voluntarily submit to jurisdiction or if they may be held to answer under the State's long-arm statute. *Allianz Risk Trans. Bermuda v. S.J. Camp & Co.,* 117 S.W.3d 92, 95 (Tex.App.-Tyler 2003, no pet.).

### TEXAS LONG-ARM STATUTE

Before a Texas court may exercise jurisdiction over a nonresident defendant,

two conditions must exist: (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). The Texas long-arm statute states as follows:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).

■ The broad language of Section 17.042 extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit. *BMC Software Belgium, N.V.,* 83 S.W.3d at 795. Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### SPECIFIC JURISDICTION

■ In an effort to ensure compliance with the federal constitutional standard, Texas has designed its own formula for specific jurisdiction:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic.

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm,* 784 S.W.2d at 358.

■ These three factors track the elements of the jurisdictional test that have evolved in the United States Supreme Court decisions. *Id.* When applying the jurisdictional formula to a particular case, we must weigh the facts carefully and avoid the mechanical application of any test. *Fish v. Tandy Corp.,* 948 S.W.2d 886, 894 (Tex.App.-Fort Worth 1997, writ denied).

### APPLICATION

■ We first examine the evidence to determine if Dion performed acts which would establish minimum contacts with Texas. NHIC, a Texas corporation, paid Dion over an hundred thousand dollars to find it a reinsurer. Dion sent its representatives to Texas in both February and July of 2000 to work out reinsurance details with NHIC. Dion made innumerable phone calls, and sent both facsimiles and e-mails to Texas during the period between February and August, when the reinsurance contract was agreed upon by NHIC and Allianz Bermuda. All of these acts

demonstrate that Dion was facilitating the consummation of the reinsurance contract in Texas. *See id.*

The causes of action alleged by Camp involve Dion's alleged attempt to use the reinsurance contract to deprive Camp of its commission for finding a reinsurer for NHIC. It is undisputed that after Camp contacted Dion, Dion became the principal contributor to the efforts which ultimately resulted in the reinsurance contract between NHIC and Allianz Bermuda. The reinsurance contract itself was to be performed in Texas. Such acts, on Dion's part, constitute purposeful minimum contacts. *See BMC Software Belgium, N.V.,* 83 S.W.3d at 795.

We now evaluate Dion's contacts to determine whether the trial court's assertion of specific jurisdiction comports with fair play and substantial justice. *See Guardian Royal Exch. v. English China,* 815 S.W.2d 223, 228 (Tex.1991) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)). In conducting our analysis, we consider (1) the burden on the defendant, (2) the interest of the foreign state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Guardian Royal Exch.,* 815 S.W.2d at 228.

First, Dion claims it will be burdened by having to send three witnesses in the case to Texas. Dion was as indispensable a party to the preparation of the reinsurance contract as it is in the litigation springing therefrom. During the events leading to the reinsurance contract, Dion sent its people to Texas rather insisting that the other parties meet in Ontario. Jurisdiction has been established in Texas for all of the other parties to the instant lawsuit. It is less burdensome for Dion to come to litigate in Texas than for the other parties to travel to Ontario. Considering the aforementioned circumstances, it is relatively less burdensome for Dion to come to Texas to defend its interests.

Second, Texas has a strong interest in protecting its corporations when a possible tort has been committed against one of them. *See Thompson v. Handa–Lopez, Inc.,* 998 F.Supp. 738, 745 (W.D.Tex.1998). Dion is among three defendants whom Camp alleges tortiously interfered with its NHIC contract. The interference with its NHIC contract would have had tortious consequences affecting Camp in Texas. *See Union Carbide Corp. v. UGI Corp.,* 731 F.2d 1186, 1190 (5th Cir.1984).

Third, Camp, as a Texas corporation with its principal place of business in Texas, can obtain the most convenient and effective relief in a Texas court. Finally, Texas is the most efficient venue for the resolution of this controversy because each of the other three defendants in this case are already subject to the jurisdiction of Texas courts.[4] Accordingly, we hold that jurisdiction is permitted by the Texas long-arm statute and that the exercise of specific jurisdiction by Texas courts over Dion in the case at hand meets both the federal and state requirements of due process. Dion's sole issue is overruled.

### CONCLUSION

Having overruled Dion's sole issue, we *affirm* the trial court's order denying Dion's special appearance.

---

4. The fifth factor has no implications in the    instant case.