COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                                NO.
2-09-00336-CV

 

 

MONCRIEF
OIL INTERNATIONAL, INC.                                             APPELLANT

 

                                                             V.

 

OAO GAZPROM;
GAZPROM                                                             APPELLEES

EXPORT,
LLC; AND GAZPROM

MARKETING & TRADING, LTD.

 

 

                                                       ------------

 

               FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

                                               I.  Introduction

This
is an interlocutory special appearance appeal. 
Appellant Moncrief Oil International, Inc.
appeals the trial court=s order granting the special
appearances filed by Appellees OAO
Gazprom (Gazprom); Gazprom Export, LLC; and Gazprom
Marketing & Trading, Ltd.[1]  In its first, second, and fourth issues, Moncrief Oil contends that these three Appellees
failed to negate all bases of personal
jurisdiction.  In a fifth issue, Moncrief Oil argues that the trial court abused its
discretion by refusing to compel the depositions of two key representatives of Appellees.  For the reasons
set forth below, we hold that the trial court lacks general jurisdiction over Gazprom; that Gazprom Marketing
& Trading, Ltd. is not, for jurisdictional purposes, fused with GMT USA;[2]
and that the trial court lacks specific jurisdiction over Moncrief
Oil=s tortious interference with a business relationship claims
and Moncrief Oil=s
misappropriation of trade secrets claims, both asserted against Gazprom and Gazprom Export.  Consequently, we will affirm the trial court=s
order granting Appellees=
special appearances.

II.  Factual Background Overview

The jursidictional facts presented to the trial court were
disputed.  Essentially, Moncrief Oil, a Fort Worth, Texas-based independent oil and
gas company, asserts that it reached an agreement in 2004 with Occidental
Petroleum Corporation for a Texas-based joint venture to focus on the
importation of liquefied natural gas (LNG) and the development of a regasification facility in Ingleside, Texas.  Moncrief Oil
alleges that in the course of its business, it developed confidential trade
secret information relating to the marketing of Russian natural gas and LNG in
the United States.[3]  Moncrief Oil
alleges that it offered Gazprom the opportunity to
participate in the joint venture with Occidental and that, during negotiations
concerning the joint venture, Gazprom and Gazprom Export learned trade secrets belonging to Moncrief Oil concerning the marketing, sales, and
distribution in the United States of LNG. Moncrief
Oil alleges that Gazprom and Gazprom
Export misappropriated these trade secrets and used them for themselvesCin
fact setting up for themselves in Houston, Texas, the type of LNG regasification facility proposed by Moncrief
Oil to be utilized in the joint ventureCand
that Gazprom and Gazprom
Export tortiously interfered with the Occidental
joint venture.  Moncrief
Oil filed suit against Appellees asserting these
causes of action, as well as causes of action for conspiracy to tortiously interfere with the Occidental joint venture and
for conspiracy to misappropriate trade secrets.

Appellees
point out that Moncrief Oil had previously filed a
lawsuit against them in federal court for breach of contract and negligent
misrepresentation relating to Moncrief Oil=s
claimed interest in the Yuzhno-Russkoye Field, an oil
field located in Russia.  Judge Terry
Means dismissed that lawsuit, concluding that Apersonal
jurisdiction cannot constitutionally be exercised over the Gazprom
Defendants.@[4]  Appellees claim
that the present litigation is simply a second attempt by Moncrief
Oil to pursue the same litigation that was dismissed by Judge Means.  Moncrief Oil,
however, points out that a Moncrief Oil affiliate is
pursuing the Yuzhno-Russkoye Field related litigation
in a German court and argues that the present litigation is separate from its
prior suit.

Appellees
filed special appearances, and the trial court granted them.  Moncrief Oil
perfected this interlocutory appeal.

III.  Standard of Review
and Burdens of Proof

The
standard of review and the burdens of proof that we apply in reviewing a trial
court=s
ruling on a special appearance are recited extensively in the case law.  Under the Texas long‑arm
statute, the plaintiff has the initial burden to plead sufficient allegations
to confer jurisdiction.  Retamco
Operating, Inc. v. Republic Drilling Co., 278 S.W.3d
333, 337 (Tex. 2009).  This
minimal pleading requirement is satisfied by an allegation that the nonresident
defendant is doing business in Texas.  See
Assurances Generales Banque
Nationale v. Dhalla,
282 S.W.3d 688, 695 (Tex. App.CDallas
2009, no pet.).  The nonresident
defendant has the burden of negating all bases of jurisdiction alleged in the
plaintiff=s
petition.  Moki
Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007); Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 807
(Tex. 2002), cert. denied, 537 U.S. 1191 (2003).

In
determining whether or not a defendant has negated all potential bases for
jurisdiction, the trial court frequently must resolve questions of fact.  See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  And when the trial court does not make
findings of fact and conclusions of law in support of its ruling on a defendant=s
special appearance, all facts necessary to support the ruling that are
supported by the evidence are implied.  See
Retamco Operating, Inc., 278 S.W.3d at 337. 
These implied findings are not conclusive, however, when the appellate
record includes the reporter=s
and clerk=s
records; in this situation, the implied findings may be challenged for legal
and factual sufficiency in the appropriate appellate court.  BMC Software Belg., N.V.,
83 S.W.3d at 795.

We
review a trial court=s conclusions
of law as a legal question.  Id.  The conclusion that personal jurisdiction
exists over a defendant is a conclusion of law that we review de novo.  Retamco
Operating, Inc., 278 S.W.3d at
337.

The
special appearance hearing conducted by the trial court here was nonevidentiary in the sense that no witnesses testified and
no evidence was introduced at the hearing; counsel made Power Point
presentations to the trial court.[5]  All parties relied on affidavits, exhibits,
and deposition excerpts 
attached to their special appearances or responses.  The trial court made no findings of fact or
conclusions of law.  On our own motion,
we requested supplemental briefing from the parties on the issue of whether the
nonevidentiary nature of the special appearance hearing
in the trial court altered our standard of review in any way.  We questioned how we could review a trial
court=s
implied findings of fact for legal or factual sufficiency when no evidence was
offered or introduced before the trial court at the special appearance hearing
and the affidavits, exhibits, and deposition excerpts filed by the parties
contained factual conflicts.  That is, if
in order to decide the special appearances, the trial court merely reviewed
affidavits, exhibits, and deposition excerpts filed with it and made no
credibility determinations, then we are in the same position as the trial court
and implying all facts supported by the evidence in favor of the trial court=s
ruling seems inappropriate.  See Villagomez v. Rockwood Specialties, Inc., 210 S.W.3d 720,  726B27
(Tex. App.CCorpus
Christi 2006, pet. denied) (expressing similar concerns).

The
parties filed supplemental briefs addressing our standard-of-review concerns,
and based on the supplemental briefing, we conclude that although the special
appearance hearing was nonevidentiary and despite our
concerns, we must nonetheless defer to all implied findings of fact that
support the trial court=s grant of Appellees=
special appearances so long as legally and factually sufficient evidenceCi.e.,
factual statements set forth in the affidavits, exhibits, and deposition
excerpts filed with the trial courtCexists
supporting them.[6]

IV.  The Law Concerning Personal
Jurisdiction

Texas
courts may assert in personam jurisdiction over a
nonresident if (1) the Texas long‑arm statute
authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction
is consistent with federal and state constitutional due‑process
guarantees.  Moki
Mac River Expeditions, 221 S.W.3d
at 574.

A. 
Personal Jurisdiction Under the Texas Long-Arm
Statute

The
Texas long‑arm statute sets out a nonexclusive
list of activities that constitute doing business in Texas.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 17.042
(Vernon 2008); PHC‑Minden, L.P. v. Kimberly‑Clark Corp., 235 S.W.3d
163, 166 (Tex. 2007); Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d
223, 226 (Tex. 1991).  The broad
language of section 17.042 extends Texas courts=
personal jurisdiction Aas far as the federal
constitutional requirements of due process will permit.@  PHC‑Minden,
L.P., 235 S.W.3d at 166;
Moki Mac River Expeditions, 221 S.W.3d at 575.

B.  The Limits of Personal Jurisdiction

Under the Guarantees of Due Process

In
addition to the long‑arm statute, the exercise
of in personam jurisdiction over a nonresident
defendant must satisfy federal due process requirements.  See Int=l
Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); PHC‑Minden L.P., 235 S.W.3d at 166; Moki Mac
River Expeditions, 221 S.W.3d at 575.  The exercise of personal jurisdiction over a
nonresident defendant satisfies the due process requirements of the Fourteenth
Amendment only when (a) the nonresident defendant has established minimum
contacts with the forum state and (b) the exercise of jurisdiction comports
with traditional notions of fair play and substantial justice.  See Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475B76,
105 S. Ct. 2174, 2183B85
(1985); PHC‑Minden, L.P., 235 S.W.3d at 166; Moki Mac
River Expeditions, 221 S.W.3d at 575.

1.  Due
Process Minimum Contacts Analysis

The
focus of a due process, minimum contacts analysis is on the nonresident
defendant=s
activities and expectations.  Michiana
Easy Livin= Country,
Inc. v. Holten, 168 S.W.3d
777, 790 (Tex. 2005); Am. Type Culture Collection, Inc., 83 S.W.3d at 806. 
A nonresident defendant=s
contacts with a forum state can give rise to (a) general jurisdiction or (b)
specific jurisdiction.  See PHC‑Minden, L.P., 235 S.W.3d at 166; Moki Mac
River Expeditions, 221 S.W.3d at 575B76.

a.  General
Jurisdiction

General
jurisdiction refers to personal jurisdiction over a nonresident defendant in a
lawsuit in which the cause of action does not arise out of or relate to the
nonresident defendant=s contacts with the forum
state.  See,
e.g., PHC‑Minden, L.P., 235 S.W.3d at 168. 
General jurisdiction is present when the nonresident defendant=s
contacts in a forum state are continuous and systematic.  Id. at 167B69. 
Usually, to be subject to general jurisdiction of the forum state, the
nonresident defendant must be engaged in longstanding business there, such as
marketing, shipping products, performing services, or maintaining one or more
offices there.  Id.
at 168.

b.  Specific
Jurisdiction

Specific
jurisdiction refers to personal jurisdiction over a nonresident defendant in a
lawsuit that arises out of or is related to the nonresident defendant=s
contacts with the forum state.  Spir
Star AG v. Kimich, 310 S.W.3d
868, 873 (Tex. 2010); Moki Mac River
Expeditions, 221 S.W.3d at 576.  When specific jurisdiction is asserted, the
minimum contacts analysis focuses on the relationship between the nonresident
defendant, the forum state, and the litigation. 
Moki Mac River Expeditions, 221 S.W.3d
at 575B76; Guardian Royal Exch. Assurance,
Ltd., 815 S.W.2d at 226.  For a court to exercise specific jurisdiction
over a nonresident defendant, two requirements must be met:  (1) the nonresident defendant=s
contacts with the forum state must be purposeful;  and (2) the cause of action must arise
from or relate to those contacts.  See
Burger King Corp., 471 U.S. at 473B76,
105 S. Ct. at 2182B84; Spir
Star AG, 310 S.W.3d at 873; Moki
Mac River Expeditions, 221 S.W.3d at 579; BMC
Software Belg., N.V., 83 S.W.3d
at 796.

Purposeful
contacts are key to a jurisdictional due process
analysis.  See  Michiana
Easy Livin=
Country, Inc., 168 S.W.3d at
784; Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d
at 226B27.  There are three parts to a purposeful availment inquiry: 
(1) only the nonresident defendant=s
contacts with the forum are relevant, not the unilateral activity of another
party or a third person; (2) the contacts relied on must be purposeful rather
than random, fortuitous, or attenuated; and (3) the nonresident defendant must
seek some benefit, advantage, or profit by availing itself of the
jurisdiction.  See Moki Mac River Expeditions, 221 S.W.3d
at 575; Michiana Easy Livin=
Country, Inc., 168 S.W.3d at 784B85.

Specific
jurisdiction is established only when the nonresident defendant=s
alleged liability arises from or is related to activity conducted within the
forum.  Moki
Mac River Expeditions, 221 S.W.3d
at 576; BMC Software Belg., N.V., 83 S.W.3d at 796.  The Aarises from or relates to@
requirement lies at the heart of specific jurisdiction by defining the required
nexus between the nonresident defendant, the litigation, and the forum
state.  Moki
Mac River Expeditions, 221 S.W.3d
at 579.  In order for a
nonresident defendant=s contacts in a forum state
to support an exercise of specific jurisdiction, there must be a substantial
connection between those contacts and the operative facts of the
litigation.  Id.
at 585.

2. 
Traditional Notions of Fair Play and Substantial Justice

Finally,
in addition to the requirement of minimum contacts with the forum state, the
exercise of personal jurisdiction over a nonresident defendant must comport
with traditional notions of fair play and substantial justice.  See Burger King Corp.,
471 U.S. at 476, 105 S. Ct. at 2184; BMC Software Belg., N.V.,
83 S.W.3d at 795.  These terms gain meaning when viewed in light
of the minimum contacts a defendant has had with the forum; when a nonresident
defendant has purposefully availed itself of the privilege of conducting
business in a foreign jurisdiction, only in the very rare case will the
exercise of jurisdiction over that defendant not comport with traditional
notions of fair play and substantial justice. 
See Spir Star AG, 310
S.W.3d at 878; Guardian Royal Exch.
Assurance, Ltd., 815 S.W.2d at 231.

V.  Jurisdictional Analysis

In
determining whether the record before us establishes personal jurisdiction, we
examine individually each Appellee=s
contacts with Texas and each of Moncrief Oil=s
claims against each Appellee.  See,
e.g., Kelly, 301 S.W.3d at 659B60
(analyzing claim for violation of Texas Trust Act and claim for fraud
separately for jurisdictional purposes); Michiana
Easy Livin=
Country, Inc., 168 S.W.3d at 785
(explaining that only the defendant=s contacts
with the forum count, not the unilateral activity of another party or third
person); see also Seiferth v. Helicopteros
Atuneros, Inc., 472 F.3d
266, 274B75
(5th Cir. 2006) (recognizing that specific jurisdiction is a claim-specific
inquiry).

A.  Moncrief Oil=s
Jurisdictional Allegations

As
to each Appellee, Moncrief Oil pleaded,
A[Appellee]
has done business in Texas (as defined in Texas Civil Practice & Remedies
Code '
17.042).  It is therefore subject to
personal jurisdiction in this State.@  Moncrief Oil=s
live pleading then sets forth thirty-five paragraphs of factual statements,
including allegations that during settlement negotiations in Fort Worth, Texas,
relating to Moncrief Oil=s
federal lawsuit against Gazprom, Moncrief
Oil shared Aconfidential
information with Timothy Sutherland and Alexander Medvedev@
(who were acting on behalf of Gazprom and Gazprom Export) based on representations by those
individuals that they would keep the information confidential.  Moncrief Oil
alleged that the confidential information included Aconfidential
details of Moncrief=s
joint venture with Occidental, in-depth market analysis of the North American
midstream/pipeline market, and in-depth studies and assessments of existing and
proposed re-gasification facilities located in North America and in the Gulf
Coast area of the United States.@  Moncrief Oil
further alleged that Gazprom scheduled a meeting with
Occidental in California and threatened Occidental if it did not pressure Moncrief Oil to settle or end its federal litigation
against Gazprom. 
And finally, Moncrief Oil alleged that Appellees used the confidential information obtained from Moncrief Oil to open their own LNG regasification
facility in Houston, Texas, via an entity named GMT USA.

Based
on these facts, Moncrief Oil pleaded causes of action
for tortious interference with its Occidental joint
venture, misappropriation of trade secrets, and conspiracy to tortiously interfere and to misappropriate trade secrets[7]
by Appellees.  Moncrief Oil also pleaded that Gazprom
Marketing & Trading, Ltd. was the alter ego of or fused with GMT USA.  Moncrief Oil claims
that the trial court possesses general and specific jurisdiction over Gazprom and specific jurisdiction over Gazprom
Export and Gazprom Marketing & Trading, Ltd.

B. 
Time Line

The
affidavits, deposition excerpts, and documentary evidence submitted to the
trial court establish the following time line of Appellees=
contacts with Moncrief Oil and with Texas.  While the subject of the meetings and the
conversations that occurred at the meetings are disputed, the fact that these
contacts occurred is not disputed.

July 2004

Moncrief Oil=s CEO, Richard Moncrief, meets with the Chairman of Gazprom=s Management Board, Alexey Miller,[8]
in Moscow, Russia.  The purpose of this
meeting was to discuss a proposed joint venture between Moncrief
Oil, Occidental, and Gazprom involving a regasification plant in Ingleside, Texas.

 

 








2004
through early 2005

 

Moncrief Oil=s Jeff Miller and Andrey Konstantinovitch Krivorotov, Advisor to the Deputy Head of the Management
Board of Gazprom, exchange over fifty communications
(emails and phone calls).  These
communications were to and from Moncrief Oil=s Fort Worth office.

 

September
2004

 

Moncrief Oil=s Jeff Miller and Moncrief Oil=s CFO, David Maconchy,
meet Ivan Zolotov, special assistant to Alexey Miller, in Moscow, Russia.  Moncrief Oil
discloses confidential trade secret information to facilitate the joint venture
between Moncrief Oil, Occidental, and Gazprom.

 

September
22, 2004

 

Richard Moncrief
meets Gazprom=s Alexander Ryazanov
in Washington, D.C., to further discuss the joint venture.  Moncrief Oil=s trade secret
information is again presented.

 

June
7, 2005

 

Moncrief Oil files a federal
lawsuit against Gazprom and other defendants.

 

October
and November 2005

 

Three meetings occur: 

 

1.           
Houston,
Texas:  Richard Moncrief
meets Alexander Medvedev,[9]
and Gazprom Export=s Timothy Sutherland.  Moncrief disclosed
updated confidential information concerning the Ingleside, Texas, regasification facility; the importation of LNG into the
North American market; potential marketing partners; and the marketing of regasified LNG. 
Medvedev and Sutherland agreed to maintain the confidentiality of the
information and to not use or disclose it to any third parties

.

 








2. 
Boston, Massachusetts:  Richard Moncrief meets with Medvedev and Sutherland.  They continue discussions concerning the
Ingleside regasification facility.  Moncrief claims
that he again reminded Medvedev and Sutherland of the confidential nature of
the information he was providing and that they both agreed to keep the
information confidential and to not use or disclose it.

 

3. 
Fort Worth, Texas:  Richard Moncrief, Miller, and Maconchy
meet with Sutherland.  Sutherland claims
to be acting on behalf of Gazprom and Gazprom Export.  They
continue discussions relating to the Ingleside facility and Moncrief
Oil=s competitive
assessment of the North American mid and downstream natural gas markets.  Moncrief claims
that he again emphasized the confidential nature of the information and that
Sutherland again promised to keep the information confidential and to not use
or disclose it.

 

February
2006

 

Sutherland and Boris Ivanov
acting on behalf of Gazprom meet with Occidental=s Todd Stevens and
Casey Olson in California.

 

July
2006

 

GMT
USA opens in Houston, Texas, for the regasification
of LNG. 

 

April
3, 2008

 

Moncrief Oil files the present lawsuit.

 

C.  OAO Gazprom

Gazprom is
a Russian company with its principal place of business in Russia.  Gazprom=s
special appearance alleges that it is not a citizen nor a resident of Texas;
does not maintain a registered agent in Texas; does not maintain a place of
business in Texas; has no employees, servants, or agents in Texas; did not
commit any statutory violation, breach of contract, or tort, in whole or in
part, in Texas; has had no continuous or systematic contacts with Texas; and
did not commit any acts that would put it on notice that it was subject to the
jurisdiction of a Texas court.  Gazprom=s
special appearance is verified by Krivorotov, Advisor
to the Deputy Head of the Management Board of Gazprom.

1. 
General Jurisdiction

As
set forth above, Gazprom=s
contacts with Texas include extensive phone calls and emails to Moncrief Oil=s
Texas office concerning a proposed, but never consummated, business deal and
meetings in October and November 2005 in Fort Worth and Houston, Texas, at
which Richard Moncrief disclosed confidential
information to Gazprom.  Negotiating by phone and email with a single
Texas resident about the possibility of doing business in Texas cannot itself
constitute doing business in Texas for purposes of general jurisdiction.  See, e.g., PHC-Minden L..P., 235 S.W.3d at 170B71
(holding contacts with Texas would not support general jurisdiction).[10]  Traveling to Texas twice in two months for
meetings that did not result in a signed contract or venture with a Texas
resident likewise is not the type of longstanding, continuous, and systematic
contact required for the exercise of general jurisdiction over Gazprom to satisfy federal due process.  See PHC-Minden L..P., 235 S.W.3d at 170 (explaining
that two trips to Texas by PHC-Minden L.P. employees
were insufficient to support the exercise of general jurisdiction over PHC-Minden L.P.). 
Thus, these three instances of contacts by Gazprom
with Texas do not, as a matter of law, rise to the level
of minimum contacts necessary to subject Gazprom to
general jurisdiction in a Texas state court. 
See id. at 167B69
(quoting the holding in Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416B17,
104 S. Ct. 1868, 1873 (1984), that sending CEO to Texas for contract
negotiation session, accepting checks drawn on Texas bank, purchasing products
from Texas, and sending personnel to Texas for training did not constitute
continuous, systematic contacts that would satisfy federal due process
requirement).  Thus, we hold that the
trial court properly determined that it could not, consistently with federal
due process guarantees, exercise general personal jurisdiction over Gazprom.

We
overrule the portion of Moncrief Oil=s
second issue contending that general jurisdiction exists over Gazprom in Texas state courts.

2. 
Specific Jurisdiction

We
next address whether the Texas long-arm statute authorizes Texas jurisdiction
over Moncrief Oil=s
claims against Gazprom for tortious
interference with the Occidental joint venture and for misappropriation of
trade secrets, whetherCfocusing on the relationship
between Gazprom, Texas, and the litigationCGazprom=s
contacts with Texas were purposeful and whether Moncrief
Oil=s
alleged causes of action arise from or relate to those contacts.  See Moki Mac
River Expeditions, 221 S.W.3d
at 579; BMC Software Belg., N.V., 83 S.W.3d at 796.

a.  Tortious
Interference With Joint Venture 

Concerning
Moncrief Oil=s tortious interference claim, the special appearance record
conclusively establishes that any tortious
interference with Moncrief Oil=s
Occidental joint venture that may have occurred happened in California.  The meeting between Gazprom
and Occidental=s
Todd Stevens at which Gazprom allegedly made threats
that interfered with the business relationship existing between Occidental and Moncrief Oil occurred in California.  Because the elements of
this alleged tort purportedly occurred in California, not Texas, specific
jurisdiction over this claim does not exist in Texas.  See BMC Software Belg., N.V., 83 S.W.3d at 796B97
(holding specific jurisdiction did not exist in Texas for fraud and negligent
misrepresentation claims when based on conversations and negotiations that
occurred outside of Texas).

Moncrief Oil
nonetheless points out that Gazprom=s tortious interference with its Occidental joint venture was
Adirected
toward@
Texas and claims that it suffered damages in Texas.  The Texas Supreme Court in Michiana Easy Livin=
Country, Inc. rejected the Adirected-a-tort-at-Texas@
specific jurisdiction analysis.  168 S.W.3d at 790B92; see
also Kelly, 301 S.W.3d at 661 (reversing court of
appeals for applying directed-a-tort-at-Texas analysis and explaining, Awe
rejected the concept of directed-a-tort jurisdiction in Michiana.@).  The supreme court in
Michiana Easy Livin=
Country, Inc. noted that the directed-a-tort-at-Texas
analysis shifted the focus from the relationship between the defendant,
the forum, and the litigation to a focus on the plaintiff, the forum,
and the litigation.  168
S.W.3d at 790. 
The supreme court noted that this analysis also
confused the roles of judges and juries by equating the jurisdictional inquiry
with the underlying merits; that is, under the directed-a-tort-at-Texas
analysis, a defendant may defeat personal jurisdiction by proving the meritsCthat
no tort occurred.  Id.  The supreme court
explained that A[b]usiness
contacts are generally a matter of physical fact, while tort liability
(especially misrepresentation cases) turns on what the parties thought, said,
or intended.  Far better that judges
should limit their jurisdictional decisions to the former rather than involving
themselves in trying the latter.@  Id. at 791.  Thus, that Gazprom=s
alleged tortious interference with the Moncrief Oil-Occidental joint venture was Adirected
at@
TexasBto
the extent that Moncrief Oil is a Texas resident or
because Moncrief Oil as a Texas resident alleges it
suffered damages in TexasBis insufficient to confer
specific jurisdiction on Texas courts over this claim.  See id. at
789B90
(explaining that it is the extent of the defendant=s
conduct and connection with the forum that is the critical focus, not simply
the residence of the plaintiff).[11]

The
cases relied upon by Moncrief Oil in support of its
directed-a-tort-at-Texas jurisdictional analysis were either decided before Michiana Easy Livin=
Country, Inc. or are distinguishable on their facts.  See, e.g., Retamco Operating, Inc., 278 S.W.3d
at 333; see also Cent. Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376 (5th Cir. 2003); Union Carbide Corp. v. UGI Corp., 731 F.2d 1186 (5th Cir. 1984).  Thus, we hold that the trial court properly
granted Gazprom=s
special appearance concerning Moncrief Oil=s tortious interference claim.

We
overrule the portion of Moncrief Oil=s
second issue contending that the trial court possesses specific jurisdiction
over Gazprom based on Moncrief
Oil=s tortious interference with a business relationship claim.

b.  Misappropriation of
Trade Secrets

We
next address whether specific jurisdiction exists over Gazprom
concerning Moncrief Oil=s
misappropriation of trade secrets claim. 
The elements of misappropriation of trade secrets are (1) existence of a
trade secret, (2) breach of a confidential relationship or improper discovery
of a trade secret, (3) use of the trade secret, and (4) damages.  IBP, Inc. v. Klumpe,
101 S.W.3d 461, 467 (Tex. App.CAmarillo
2001, pet. denied).

Gazprom
claims that the information that Richard Moncrief
disclosed at the meetings was not confidential and did not constitute trade
secrets.  But neither the trial court nor
this court is permitted to determine the merits of Moncrief
Oil=s
claims in making a jurisdictional determination.  See Michiana
Easy Livin=
Country, Inc., 168 S.W.3d at 790B91.  Moncrief Oil
alleged in its petition and Richard Moncrief asserted
in his affidavit that Moncrief Oil provided
confidential trade secret information to Gazprom at
various meetings with Gazprom, including the meetings
in Houston and Fort Worth, Texas.  These
allegations and sworn assertions sufficiently allege that the commission of a
part of the tort of misappropriation of trade secrets occurred in Texas to
authorize personal jurisdiction under the Texas long-arm statute and to shift
the burden to Gazprom to negate this basis of personal
jurisdiction.  See Tex. Civ. Prac. & Rem. Code Ann. '
17.042(2) (providing that a nonresident does business in Texas when he commits
a tort in whole or in part in Texas); see also Pulmosan
Safety Equip. Corp. v. Lamb, 273 S.W.3d 829, 839
(Tex. App.CHouston
[14th Dist.] 2008, pet. denied) (holding plaintiff was not required to prove he
actually used a Pulmosan hood because that was
a merits-based question; instead, allegation of use of a Pulmosan
hood in Texas was sufficient to shift burden to defendant to negate
jurisdiction).

Gazprom
claims that it factually negated specific jurisdiction over Moncrief
Oil=s
alleged misappropriation of trade secrets claim by proving that Moncrief Oil disclosed its alleged trade secret information
to the U.S. Department of Energy and through Todd Stevens=s
testimony that a major oil company with the right connections could discover
from public sources all of the information that Moncrief
Oil claims constitutes trade secrets. 
These arguments by Gazprom are waiver
argumentsCthat
Moncrief Oil waived the allegedly secret nature of
the information.  Waiver is an
affirmative defense.  Tex. R. Civ. P. 94
(stating waiver is an affirmative defense); In re EPIC Holdings, Inc.,
985 S.W.2d 41, 57 (Tex. 1998) (orig. proceeding) (AWaiver
is an affirmative defense.@).  An affirmative defense does not tend to rebut
factual propositions asserted by a plaintiff, but rather it seeks to establish
an independent reason why the plaintiff should not recover.  Gorman v. Life Ins. Co. of N. Am., 811
S.W.2d 542, 546 (Tex.), cert. denied, 502 U.S.
824 (1991).  Here, Gazprom
claims that even if the information disclosed to it by Moncrief
Oil does constitute trade secret information, Moncrief
Oil nonetheless waived the privileged nature of the information because it
disclosed the information to the U.S. Department of Energy and because the right
inquiries to the right public entities could allegedly result in the discovery
of the same information.[12]  Because these arguments by GazpromCwhether
correct or notCassert
its right to prevail on the merits of Moncrief Oil=s
misappropriation of trade secrets claim based on the affirmative defense of
waiver, we are not to address them in our jurisdictional analysis.  See Michiana
Easy Livin=
Country, Inc., 168 S.W.3d at 790B91
(recognizing fallacy of nonresident defendant=s
attempt to defeat jurisdiction on basis of merits of claim); see also In re
BP Prods. N. Am. Inc., 263 S.W.3d 106, 115B17
(Tex. App.CHouston
[1st Dist.] 2006, orig. proceeding) (holding disclosure of reserve figure to
SEC did not waive privilege).

Moncrief Oil=s
pleading and Richard Moncrief=s
affidavit and deposition testimony allege that Gazprom
Aused@ the
trade secret information (the third element of Moncrief
Oil=s
misappropriation of trade secrets cause of action) it obtained in Texas by setting
up GMT USA in Houston, Texas, an entity that Moncrief
Oil alleges engages in the very business proposed by Moncrief
Oil to Occidental and Gazprom via the Ingleside,
Texas, regasification facility.  Gazprom, however,
points to excerpts from Richard Moncrief=s
deposition testimony as jurisdictional evidence factually negating this alleged
basis for specific personal jurisdiction. 
Viewed in context, the testimony Gazprom
points to does not negate Gazprom=s
alleged Ause@ of Moncrief Oil=s
trade secret information in Texas.[13]  Thus, Gazprom has
not, for jurisdictional purposes, factually negated either that Moncrief Oil disclosed trade secret information to Gazprom in Texas or that Gazprom
used Moncrief Oil=s
trade secret information in Texas.

Having
determined that the Texas long‑arm statute
authorizes the trial court=s
exercise of jurisdiction over Gazprom concerning Moncrief Oil=s
misappropriation of trade secrets claim and that Gazprom
has not factually negated Moncrief Oil=s
allegations of specific jurisdiction concerning this claim, we next address
whether this exercise of jurisdiction by the trial court would be consistent
with federal constitutional due‑process
guarantees.  See Moki
Mac River Expeditions, 221 S.W.3d
at 574.  As previously stated, the
focus of a due process, minimum contacts analysis is on the nonresident defendant=s
activities and expectations.  Michiana Easy Livin=
Country, Inc., 168 S.W.3d
at 790.  There are three
parts to a purposeful availment inquiry:  (1) only the nonresident defendant=s
contacts with the forum are relevant, not the unilateral activity of another
party or a third person; 
(2) the contacts relied on must be purposeful rather than random,
fortuitous, or attenuated;  and (3) the
nonresident defendant must seek some benefit, advantage, or profit by availing
itself of the jurisdiction.  See Moki Mac River Expeditions,
221 S.W.3d at 575; Michiana
Easy Livin= Country,
Inc., 168 S.W.3d at 784B85.

Focusing
on the relationship between Gazprom, Texas, and the
litigation, we examine whether the contacts relied upon by Moncrief
Oil are attributable to Gazprom, whether the contacts
were purposeful, and whether Moncrief Oil=s
claim for misappropriation of trade secrets arises from or relates to those
contacts.  See Moki
Mac River Expeditions, 221 S.W.3d
at 579; BMC Software Belg., N.V., 83 S.W.3d at 796.  As
set forth above, the contacts Moncrief Oil alleges
concerning its misappropriation of trade secrets claim are Gazprom=s
emails and phone calls to Moncrief Oil=s
Fort Worth, Texas, office and two trips by Gazprom to
Texas for meetings with Moncrief Oil.  Moncrief Oil
alleges that confidential trade secrets were provided to Gazprom
during the emails, phone calls,[14]
and at the Texas meetings based on Gazprom=s
continued promise to keep the information confidential and to not use or
disclose it.  No dispute exists that
these contacts are attributable to Gazprom or that Moncrief Oil=s
claim for misappropriation of trade secrets arises from or relates to these
alleged contacts.  Thus, we address the
second prong of the due process purposeful availment inquiry, that is, whether these contacts by Gazprom with Texas were purposeful rather than random,
fortuitous, or attenuated.  See Moki Mac River Expeditions, 221 S.W.3d at 574.

Gazprom
contends that its trips to Texas were for the purpose of discussing settlement
of Moncrief Oil=s
federal lawsuit and thus were merely fortuitous and cannot as a matter of law be considered purposeful contacts with Texas.[15]  Gazprom has not
cited, and we have not located, any Texas cases holding that business meetings
conducted by a nonresident defendant while in Texas for a settlement conference
or a mediation automatically cannot constitute a contact with Texas.  Logic dictates that a nonresident coming to
Texas for a settlement conference would piggyback other business or
negotiations in Texas to that trip.  We
cannot agree that all conduct of a nonresident defendant while in Texas for a
settlement conference is somehow insulated and may not be considered a contact
with Texas for purposes of a jurisdictional analysis.

Gazprom
also argues that the alleged trade secret information disclosed by Moncrief Oil in Texas had been previously disclosed to Gazprom in Moscow and in Washington, D.C., and was only redisclosed unilaterally by Moncrief
Oil in the Texas settlement conferences. 
Consequently, Gazprom argues that even if
somehow a tort claim for misappropriation of trade secrets exists, no element
of it initially occurred in Texas.  We
have located no authority for the proposition that in analyzing specific
jurisdiction of a forum over a nonresident defendant for misappropriation of
trade secrets, only the forum of the initial disclosure of trade secrets counts
as a contact.  The parties cite cases in
which the initial disclosure of trade secret information did occur in the forum
state, but these cases did not involve an allegation like Moncrief
Oil=s
allegation here that the disclosure was ongoing Aduring
the course of their ongoing discussions.@  See, e.g., Miller Yacht
Sales, Inc. v. Smith, 384 F.3d 93, 97 (3rd Cir.
2004); S & D Trading Acad., LLC v. AAFIS, Inc.,
494 F. Supp. 2d 558, 567 (S.D. Tex. 2007); Delta
Brands, Inc. v. Rautaruukki Steel, 118 S.W.3d 506, 511B12
(Tex. App.CDallas
2003, pet. denied).  Thus, the fact that Moncrief Oil=s
alleged disclosure of confidential trade secret information to Gazprom was repeated, was updated, and had occurred at
different meetings in different locations does not defeat our consideration of
the Texas disclosures in our minimum contacts analysis.

Nonetheless,
Gazprom is correct that its contacts with Texas must
be purposeful and not merely random or fortuitous.  See Michiana
Easy Livin=
Country, Inc., 168 S.W.3d at 784;  Guardian
Royal Exch. Assurance, Ltd., 815 S.W.2d at 226B27.  Although we have rejected Gazprom=s
claims that its trips to Texas were fortuitous as a matter of law simply
because settlement negotiations occurred in Texas and that its phone calls and
emails to Texas were fortuitous as a matter of law simply because alleged trade
secret information was repeated in Texas rather than initially disclosed in
Texas, our rejection of these arguments that would render Gazprom=s
contacts fortuitous does not mean that there is no evidence or insufficient
evidence that Gazprom=s
contacts were purposeful.

Gazprom
argues that its contacts with Moncrief Oil were not
purposeful because its communications with a single Texas resident that did not
result in a venture, a contract, or any kind of business deal cannot constitute
a purposeful contact with Texas.  That
is, Gazprom argues that negotiating to possibly do
business with a single Texas resident and deciding not to do business with that
resident cannot constitute doing business. 
Moncrief Oil counters that many courts have
premised specific jurisdiction on a nonresident=s
contacts via phone and email when those contacts are combined with visits to
the forum and when the plaintiff=s
claims arose from or related to those contacts. 
Moncrief Oil relies on Glencoe Capital
Partners II, LP v. Gernsbacher, 269 S.W.3d 157, 165 (Tex. App.CFort
Worth 2008, no pet.), Fish v. Tandy Corp., 948 S.W.2d
886, 895 (Tex. App.CFort Worth 1997, writ
denied), and Citrin Holdings, LLC v. Minnis, 305 S.W.3d 269, 282B83
(Tex. App.CHouston
[14th Dist.] 2009, no pet.).

The
Texas Supreme Court in Michiana Easy Livin=
Country, Inc. limited the viability of phone calls to a
forum as constituting purposeful contacts with that forum.  168 S.W.3d
at 791.  The supreme
court explained in Michiana Easy Livin=
Country, Inc. that Achanges
in technology have made reliance on phone calls obsolete as proof of purposeful
availment.@  Id. 
While Moncrief Oil is correct that courts have
nonetheless continued in some circumstances to consider phone calls in a
jurisdictional minimum contacts analysis, the facts of the cases cited by Moncrief Oil are distinguishable from the facts here for
two main reasons.  First, in Glencoe,
Fish, and Citrin Holdings, the
trial courts denied the nonresident defendants=
special appearances.  Because no findings
of fact or conclusions of law were filed in Glencoe, Fish, or Citrin Holdings, the appellate courts in
those cases implied all findings necessary to support the trial courts= denial
of each nonresident=s special appearance if such
findings were supported by the record. 
But here, the trial court granted Appellees=
special appearances; because no findings of fact or conclusions of law were
filed, we must imply all fact findings that are supported by the record in favor
of Appellees. 
Second, in Fish and Citrin
Holdings, the nonresident defendants executed contracts with Texas
residents, and in Glencoe, the nonresident defendants participated in
telephonic board meetings with Texas residents concerning a Texas-based
corporation.  See Citrin Holdings, 305 S.W.3d
at 281 (AIt
is reasonable to subject a nonresident defendant to personal jurisdiction in
Texas in connection with litigation arising from a contract specifically
designed to benefit from the skills of a Texas resident who performs
contractual obligations in Texas.@); Glencoe,
269 S.W.3d at 164B67
(holding that nonresident defendants=
telephonic participation over two-year span along with Texas resident board
members in board meetings of corporation located in Texas constituted
purposeful availment); Fish, 948 S.W.2d at 894B95 (AHe
[Fish] negotiated and contracted with Tandy, a Texas Corporation based in Fort
Worth, for distributorships in Russia.@).  Here, it is undisputed that Gazprom did not enter into a contract with Moncrief Oil as did the nonresident defendants in Fish
and in Citrin Holdings, nor did Gazprom participate telephonically in board meetings of a
corporation based in Texas as did the nonresident defendants in Glencoe.  Thus, in Glencoe, Fish, and Citron
Holdings, the trial courts=
denials of the special appearances and the appellate courts= affirmances of those denials did not rely solely on phone
calls and emails to find purposeful availment;
instead, purposeful availment included contacts in
addition to phone callsBentering into a contract or
participating in a board meeting of a Texas-based corporation.

Moncrief Oil
contends in its reply brief that the facts of this case are strikingly similar
to the facts in Quantum Catalitics, LLC v. Vantage
Point Venture Partners, No. H-07-2619, 2008 WL 5245298, at *4 (S.D. Tex.
Dec. 15, 2008).  The plaintiff in Quantum
Catalitics alleged misappropriation of trade
secrets by a nonresident defendant.  The
plaintiff pleaded that the nonresident defendant had Afeigned
an interest in investing in TSI@ but
Aactually
contacted TSI >for
the purpose of wrongfully acquiring Plaintiffs=
Trade Secrets.=@  Id. at *4.  In holding that it possessed specific
jurisdiction over the nonresident defendant, the trial court noted that the
nonresident defendant Aessentially concedes as much
by not challenging personal jurisdiction with regard to the state law claims,@
which included the misappropriation of trade secrets claim.  Id. 
The trial court noted that the nonresident defendant=s
request for summary judgment on the state law claims was Aan
implicit admission of the court=s
jurisdictional authority@ and Aalso
a waiver of Defendant=s due-process objection to
the court=s
assertion of personal jurisdiction.@  Id. at *4 n.35.  Because
the nonresident defendant in Quantum Catalitics
implicitly admitted that the trial court possessed jurisdiction over it for
purposes of the misappropriation of trade secrets claim and also waived any due
process objection to the trial court=s
assertion of personal jurisdiction over it, that case is distinguishable from
the present case in which Appellees have not made
such an admission or waiver.

Moncrief Oil
points to the two meetings Gazprom attended in Texas
as constituting contacts in addition to Gazprom=s
telephone and email contacts with Texas. 
The affidavits, exhibits, and deposition excerpts attached to the
special appearances and responses filed with the trial court contain
conflicting statements on whether the purpose of Gazprom=s
trips to Texas was primarily to discuss settlement of the federal lawsuit or
was also for the dual purpose of furthering a scheme to obtain trade secrets
from Moncrief Oil to utilize in the opening of GMT
USA.  If Gazprom
traveled to Texas primarily for the purpose of settlement negotiations in the
federal lawsuit, then given Gazprom=s
activities and expectations, the location of Texas as the place for the meeting
was simply random or fortuitous.  See Michiana Easy Livin=
Country, Inc., 168 S.W.3d
at 785.  The affidavits, exhibits,
and deposition excerpts contain facts legally and factually supporting the trial
court=s
implied finding that the location of these two meetings in Texas was merely
random or fortuitous, not purposeful.  See
Asshauer v. Farallon
Capital Partners, L.P., 319 S.W.3d 1, 16 (Tex.
App.CDallas
2008, no pet.).  These facts include that
other similar meetings were held outside of Texas, that a
federal lawsuit against Gazprom was pending in Texas,
and that Moncrief Oil could and, according to Moncrief Oil, did disclose, update, or further explain
trade secret information to Gazprom in other
locations, such as Boston, Massachusetts. 
Deferring as we must to the trial court=s
implied findings of fact, the affidavits, exhibits, and deposition excerpts
before us contain legally and factually sufficient statements of fact to
support the trial court=s implied findings that the
two meetings Gazprom attended in TexasCeven
when combined with the phone conversations and emails between Gazprom and Moncrief OilCdid
not constitute purposeful availment.  Moreover, deferring to this implied finding,
we cannot say that the facts opposing it are so overwhelming as to render it
clearly wrong and manifestly unjust.  See
id.

Gazprom
also argues that it did not seek any benefit, advantage, or profit by twice
meeting with Moncrief Oil in Texas.  Gazprom argues that
it did not enjoy any benefit by Amerely
exchanging communications concerning a proposed Texas-based joint
venture that Gazprom refused to join.@  Because we have upheld the trial court=s
implied finding of fact that Gazprom=s
contacts with Texas were not purposeful as required under the second prong of
the purposeful availment analysis, we need not reach
this argument by Gazprom, challenging the third prong
of the purposeful availment analysis.

We
overrule the remaining portion of Moncrief Oil=s
second issue contending that the trial court possesses specific jurisdiction
over Gazprom based on Moncrief
Oil=s
misappropriation of trade secrets claim.

D.  Gazprom Export, LLC

Gazprom
Export is a subsidiary of Gazprom with the exclusive
right to export Russian natural gas outside the Russian Federation.  It is a Russian company with its principal
place of business in Russia.  Moncrief Oil pleaded the same causes of action, specific
jurisdiction facts, and contacts with Texas concerning Gazprom
Export that it asserted concerning Gazprom.  Gazprom Export
admits that Timothy Sutherland was acting on its behalf at the Texas meetings
where Moncrief Oil alleges that it disclosed trade
secrets.  Thus, our specific jurisdiction
analysis concerning Gazprom is the same for Gazprom Export, and we adopt it and incorporate it
here.  For the same reasons that we held
the trial court did not possess specific jurisdiction over Gazprom
for purposes of Moncrief Oil=s tortious interference claim and Moncrief
Oil=s
misappropriation of trade secrets claim, we likewise hold the same for Gazprom Export.  We
overrule Moncrief Oil=s
first issue.

E.  Gazprom Marketing & Trading, Ltd.

Gazprom
Marketing & Trading, Ltd. is a United Kingdom corporation that markets
natural gas for the Gazprom group of companies.  While generally only the defendant=s
contacts with the forum are relevant, not the unilateral activity of another
party or a third person,[16]
Moncrief Oil alleges that Gazprom
Marketing & Trading, Ltd. is the alter ego of or is fused with GMT USA, a
Delaware corporation having its principal place of business in Houston,
Texas.  Moncrief
Oil contends that, therefore, GMT USA=s
business in Houston, Texas, and its contacts with Texas establish general
jurisdiction over Gazprom Marketing & Trading,
Ltd.

Texas
law presumes that two separate corporations are indeed distinct entities.  BMC Software Belg., N.V.,
83 S.W.3d at 798.  For a parent company and its subsidiary to be
fused for jurisdictional purposes, the plaintiffs must prove the parent company
controls the internal business operations and affairs of the subsidiary.  PHC-Minden
L..P., 235 S.W.3d
at 175.  The degree of control the
parent company exercises must be greater than that normally associated with common
ownership and directorship; the evidence must show that the two entities cease
to be separate so that the corporate fiction should be disregarded to prevent
fraud or injustice.  Id.

Moncrief Oil
bore the burden of proving its allegation that Gazprom
Marketing & Trading, Ltd. is the alter ego of or is fused with GMT
USA.  See,
e.g., Capital Tech. Info. Servs.,
Inc. v. Arias & Arias Consultores, 270 S.W.3d 741, 749 (Tex. App.CDallas
2008, pet. denied) (AThe party seeking to ascribe
one corporation=s actions to another by
disregarding their distinct corporate entities must prove this allegation.@); Ramirez
v. Hariri, 165 S.W.3d 912, 915 (Tex. App.CDallas
2005, no pet.) (same). 
To meet this burden, Moncrief Oil points to
the deposition testimony of John Hattenberger, the
president of GMT USA.  Hattenberger testified that GMT USA is funded solely by Gazprom Marketing & Trading, Ltd.; that Gazprom Marketing & Trading, Ltd. pays all salaries,
business expenses, and overhead for GMT USA; and that GMT USA is essentially an
Aasset-less@
company comprised of some furniture, computers, and cash loaned to it by Gazprom Marketing & Trading, Ltd.  Gazprom Marketing
& Trading, Ltd. points out that Hattenberger also
testified that Gazprom Marketing & Trading, Ltd.
did not exercise day-to-day control over the operations of GMT USA and that
Keith Martin of GMT USA testified that GMT USA is an independent entity.  Gazprom Marketing
& Trading, Ltd. also argues that to the extent it did provide financial aid
to GMT USA, it did so only during the start-up operations of GMT USA.  Gazprom Marketing
& Trading, Ltd. alleges that GMT USA is now operating and generating its
own revenues.

In
determining whether Hattenberger=s
deposition testimony pointed to by Moncrief Oil
satisfied its burden of rebutting the presumption that Gazprom
Marketing & Trading, Ltd. and GMT USA are separate entities, we look to
whether they observed corporate formalities. 
See PHC-Minden L.P., 235
S.W.3d at 175. 
That is, we consider whether GMT USA=s
books and Gazprom Marketing & Trading Ltd.=s books are kept separate
and whether transactions between the two are represented by appropriate entries
in their respective books in the same way as if the two were wholly independent
corporations.  See PHC-Minden
L.P., 235 S.W.3d at 172 (quoting and discussing
the Supreme Court case of Cannon Mfg. Co. v. Cudahy Packing Co., 267
U.S. 333, 335, 45 S. Ct. 250, 251 (1925), and its holding that, although the
nonresident defendant had dominated its subsidiary, immediately and completely,
and had exerted control commercially and financially over the subsidiary,
because the books of each corporation were maintained separately, Athe
corporate separation, though perhaps merely formal, was real@).  So long as the two corporations maintain a
degree of corporate separation that is more than superficial and the
policy-making authority held and exercised by the parent is no more than that
appropriate for a sole shareholder of a corporation, this exercise of control
is not enough to warrant jurisdiction over the nonresident corporation through
the resident corporation.  See PHC-Minden L.P., 235 S.W.3d
at 172 (discussing Hargrave v. Fibreboard Corp., 710 F.2d
1154, 1160 (5th Cir. 1983)).  A subsidiary
corporation will not be regarded as the alter ego of its parent merely because
of stock ownership, a duplication of some or all of the directors or officers,
or an exercise of the control that stock ownership gives to stockholders.  Id. at 175 (quoting Gentry v.
Credit Plan Corp. of Houston, 528 S.W.2d 571, 573
(Tex. 1975)); cf. Capital Tech. Info. Servs.,
Inc., 270 S.W.3d at 754B55
(listing five disregard-of-corporate-formalities type facts that rendered
entities fused for jurisdictional purposes).

The
record before us contains no evidence of the corporate formalities existing
between Gazprom Marketing & Trading, Ltd. and GMT
USA.  The facts pointed to by Moncrief OilBthat
GMT USA was initially funded solely by Gazprom
Marketing & Trading, Ltd.; that Gazprom Marketing
& Trading, Ltd. paid all salaries, business expenses, and overhead for GMT
USA; and that GMT USA was essentially an Aasset-less@
company comprised of some furniture, computers, and cash loaned to it by Gazprom Marketing & Trading, Ltd.Bdo
not necessarily mean that these two entities have disregarded corporate
formalities existing between two separate entities.  See PHC-Minden
L.P., 235 S.W.3d at 172 (discussing the
importance of a complete disregard of corporate formalities in the
determination of whether two entities are fused for jurisdictional purposes); accord
Ramirez, 165 S.W.3d at 916B17
(holding that inadequate capitalization of corporation is not sufficient, in
and of itself, to justify piercing the corporate veil and asserting personal
jurisdiction over shareholders).  In
light of the lack of this type of evidence in the record, we hold that the
trial court did not err by refusing to impute the contacts of GMT USA to Gazprom Marketing & Trading, Ltd.

We
overrule Moncrief Oil=s
fourth issue.

VI.  Refusal to Compel Medvedev=s
and Ivanov=s Depositions

Moncrief Oil
claims, alternatively, in its fifth issue that the trial court abused its
discretion by denying Moncrief Oil=s
motion to compel the depositions of Alexander Medvedev and Boris Ivanov.  Appellees contend that Medvedev=s
and Ivanov=s
depositions are unnecessary because Moncrief Oil has
had ample time to conduct jurisdictional discovery and has deposed six personsCincluding
every individual making a special appearance affidavit for Appellees
and a representative of each Appellee.  Appellees point out that the record before this court is
over 1,700 pages and argue that Moncrief Oil has
failed to demonstrate that any additional testimony from these two men would be
material to the jurisdictional issue before the court.

We
review a trial court=s decision to deny
jurisdictional discovery under an abuse of discretion standard.  See Barron v. Vanier, 190 S.W.3d 841, 847 (Tex. App.CFort
Worth 2006, no pet.); see also Lamar v. Poncon,
305 S.W.3d 130, 139 (Tex. App.CHouston
[1st Dist.] 2009, pet. denied).  In
determining whether the denial of jurisdictional discovery constituted an abuse
of discretion, we consider as nonexclusive factors the length of time the case
has been on file, the materiality and purpose of the discovery sought, and
whether the party seeking the discovery has exercised due diligence to obtain
it.  Barron, 190
S.W.3d at 847. 

Moncrief Oil
alleges that Medvedev=s and Ivanov=s
depositions are material. Moncrief Oil contends that
Medvedev initiated the Texas meetings with Moncrief
Oil and Alulled
Moncrief [Oil] into the false assurance that it was
safe [for Moncrief Oil] to share the information
[with him].@  Moncrief Oil=s
motion to compel these depositions alleged that Medvedev would provide
testimony that Ivanov and Sutherland were acting on
behalf of Gazprom in the California meeting and that
Sutherland was acting on behalf of Gazprom at the
meeting in Fort Worth.  Moncrief Oil=s
motion alleged that Ivanov would provide testimony
regarding his meeting with Occidental, Aincluding
the threat he made to Occidental and his proposal to eliminate Moncrief Oil from its joint venture with Occidental.@  Moncrief Oil
alleges in its appellate brief that Ivanov was Aat
the center of the events in California that flowed from the tortious
acts in Texas, the combination of which ultimately culminated in the
destruction of Moncrief Oil=s
Texas-based joint venture with Occidental.@

But Appellees point out that the jurisdictional evidence before
the trial court already establishes that Medvedev attended the Texas meetings, that he attended on behalf of Gazprom
and Gazprom Export, and that Ivanov attended the California meeting at the direction of
Medvedev and on behalf of Gazprom.  Appellees likewise
point out that Moncrief Oil deposed other individuals
present at these meetingsB  including Sutherland, Stevens, and OlsonBand
that Richard Moncrief attended the Texas meetings.

We
hold that the trial court did not abuse its discretion by refusing to compel
Medvedev=s
and Ivanov=s
depositions.  Moncrief
Oil does not allege or contend that the depositions of these two men would lead
to the discovery of additional contacts with Texas.  Instead, as set forth above, Moncrief Oil contends that the depositions are material
because they would show the intentional, tortious
nature of Appellees=
Texas contacts.  Moncrief
Oil=s
contentions in this regard are fully set forth in the record before us, and the
trial court could reasonably have concluded that Medvedev=s
and Ivanov=s
testimony on these issuesCfor jurisdictional purposesCwould
simply be cumulative.  See,
e.g., BMC Software Belg., N.V., 83 S.W.3d at 800B01
(holding trial court did not abuse its discretion by denying motion for
continuance to permit more discovery before special appearance hearing); In
re Weir, 166 S.W.3d 861, 864 (Tex. App.CBeaumont 2005, orig.
proceeding) (explaining that trial court possesses discretion to limit scope of
discovery to protect against cumulative or duplicative discovery).

We
therefore overrule Moncrief Oil=s
fifth issue.

VII.  Conclusion

Having
overruled Moncrief Oil=s
four issues and having determined that we need not address Moncrief
Oil=s
issue challenging the special appearance granted for OAO
Gazprombank, we affirm the trial court=s
special appearance rulings.

 

SUE WALKER

JUSTICE

 

PANEL:  GARDNER and WALKER, JJ.; and WILLIAM BRIGHAM
(Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  November 24, 2010











[1]Moncrief Oil also appealed
the special appearance granted for OAO Gazprombank but subsequently filed a motion to dismiss OAO Gazprombank from this
appeal.  We granted the motion, and OAO Gazprombank is no longer a
party to this appeal.  Thus, we need not
address Moncrief Oil=s third issue
challenging the special appearance granted for OAO Gazprombank.





[2]GMT USA is a
defendant in the underlying suit but did not file a special appearance.





[3]The trial court
ordered various documents sealed.  We
have reviewed those records in our disposition of this appeal.





[4]Judge Means=s ruling was affirmed
by the Fifth Circuit.  See
Moncrief Oil Int=l,
Inc. v. OAO Gazprom,
481 F.3d 309, 310B11 (5th
Cir. 2007).





[5]The Power Point
slides have been made part of our record, and a reporter=s record of counsel=s arguments at the
special appearance hearing was filed with this court.





[6]In its supplemental
briefing, Gazprom points out two fairly recent Texas
Supreme Court cases in which the special appearance hearings in the trial
courts were nonevidentiary and the supreme
court nonetheless recited that the proper standard of review required
the appellate court to imply all fact findings supported by the evidence in
favor of the trial court=s ruling.  See Kelly v. Gen. Interior Constr., Inc.,
301 S.W.3d 653, 657 (Tex. 2010); BMC Software
Belg., N.V., 83 S.W.3d
at 795.





[7]Appellees correctly point out
that Moncrief Oil=s conspiracy claims are based on the alleged
torts of interference with the Occidental joint venture and misappropriation of
trade secrets and that, accordingly, because no
factually distinct basis exists for Moncrief Oil=s conspiracy claims,
they add nothing to our jurisdictional analysis. See Guidry v. U.S.Tobacco Co., 188 F.3d
619, 625 (5th Cir. 1999) (holding plaintiff must establish personal
jurisdiction over a defendant individually and not as part of a
conspiracy).  Accordingly, we do not
further address Moncrief Oil=s conspiracy claims
in our jurisdictional analysis.





[8]We use the spelling AAlexey@ found in the
Affidavit of Richard W. Moncrief.  We note that at other places in the record
the name is spelled AAlexi.@





[9]The Gazprom Defendants have overlapping boards, officers, and
directors.  Alexander Medvedev served as
Deputy Chairman of Gazprom, as Director General of Gazprom Export, and as a director of Gazprom
Marketing & Trading, Ltd.





[10]Even entering into a
contract with a Texas resident does not alone satisfy the federal due process
minimum contacts requirement for purposes of general jurisdiction.  See, e.g., Burger King Corp.,
471 U.S. at 478, 105 S. Ct. at 2185 (AIf the question is whether an individual=s contract with an
out-of-state party alone can automatically establish sufficient minimum contacts
in the other party=s home forum, we
believe the answer clearly is that it cannot.@).





[11]Moncrief Oil also cites Retamco Operating, Inc. for the proposition
that the tort of tortious interference with the joint
venture occurred at least partially in Texas because the resulting injury
occurred in Texas.  278
S.W.3d at 340B41.  But the Retamco
Operating, Inc. facts are distinguishable from the facts here; in Retamco Operating, Inc., the nonresident
defendant purchased oil and gas interests in Texas.  Id. at 339.  The Texas Supreme Court noted that oil and
gas interests are real property interests and explained that A[u]nlike personal property, [the nonresident=s] real property will
always be in Texas, which leaves no doubt of the continuing relationship that
this ownership creates.@  Id. 
Here, Moncrief Oil=s alleged injury
occurred in Texas not because of Gazprom=s connection to or
ownership of Texas real property, but only because Moncrief
Oil is a Texas resident.





[12]Stevens testified, in
part:

 

Q.  But you would expect that any B and I=ll limit this not to
people on the street, but any sophisticated gas company would be able to obtain
any of the information that=s in Exhibit No. 3
through their own efforts in the public domain. 
Would you agree with that?

 

. . . .

 

A.  If they had the right resources, they could -
- they could probably do it.





[13]Gazprom quotes Richard Moncrief=s deposition
testimony that he would be speculating as to how Gazprom
used Moncrief Oil=s trade secrets, but the entirety of his
testimony on the issue was as follows:

 

Q.  And so can you identify for us anything that Gazprom has done to use Moncrief=s confidential trade
secrets?

 

A.  I can=t be specific about it until we get a chance
to examine their records.

 

Q.  In paragraph 24, sir, that first sentence, it
says, in 2007, after the Gazprom/Pace meeting with
Occidental and after Defendant Gazprom Marketing
& Trading USA, Inc. began operations using Moncrief=s trade secrets - - I=m going to stop the
sentence there.  It continues, sir.

 

Now,
my question for you is, how did Defendant Gazprom
Marketing and Trading USA, Inc. begin operations using Moncrief=s trade secrets?

 

A.  We can=t document that until we=ve had a chance to look
at the records.

 

Q.  Can you B

 

A.  It=s our belief.

 

Q.  Can you identify for us, sir, anything that Gazprom Marketing and Trading USA, Inc. did to use Moncrief=s confidential trade
secrets, sir?

 

A.  I would be speculating right now.





[14]Moncrief Oil=s Jeff Miller
testified by affidavit:

 

I spoke almost daily
with Gazprom=s Krivorotov over
the telephone from July 2004 through January 2005.  I estimate that I had at least 50 telephone
conversations with Mr. Krivorotov during that time
period. . . . I discussed in detail Moncrief=s proposal to Gazprom concerning access to Texas-based LNG facilities,
participation in the United States gas and power marketing, and a competitive
assessment of the North American mid and downstream natural gas markets.  From the outset, . . .
I reiterated that the information disclosed during our discussions was
confidential and should not be used or disclosed to any third party without Moncrief=s permission.





[15]Gazprom cites several cases
in support of this argument.  See CEM Corp. v. Pers. Chemistry, AB,
55 F. App=x 621, 625 (4th Cir. 2003); Nationwide
Mut. Ins. Co. v. Tryg Int=l
Ins. Co., 91 F.3d
790, 796 (6th Cir. 1996); Digi-tel Holdings,
Inc. v. Proteq Telecomms.
(PTE), Ltd., 89 F.3d
519, 524 (8th Cir. 1996); N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 536 F. Supp. 2d
181, 191 (D.R.I. 2008), vacated in part on other
grounds, 567 F.3d 8 (1st Cir. 2009); Conwed Corp. v. Nortene,
S.A., 404 F. Supp. 497, 504B05, 507 n.6 (D. Minn. 1975). 
Unlike Moncrief Oil=s allegations here,
however, the plaintiffs in the above cited cases did not allege that any
portion of a tort cause of action occurred while the defendant was in Texas for
settlement negotiations.  Consequently,
these cases are factually distinguishable.





[16]Moki Mac River
Expeditions,
221 S.W.3d at 575.